## HENDERSON v. JACKSON COUNTY.

*(Circuit Court, W. D. Missouri, E. D. November. 1881.)*

TOWNS—AID TO RAILROADS—ATTACHING TERRITORY.

> Under the provision of the constitution, that the legislature cannot authorize a municipal corporation to tax for its own local purposes lands lying beyond the corporate limits, the legislature has power to attach outside territory to the territory of a town and erect the territory so attached, together with the territory of the town, into a district, and authorize the district so formed to vote a subscription to the stock of a street railroad, and issue bonds in payment thereof, and an act to this effect is constitutional.

*Joseph Shippen,* for plaintiff.

*Comingo & Broadhead,* for defendant.

KREKEL, D. J. This suit is brought upon coupons detached from bonds issued by the county of Jackson to the Kansas City & Westport Horse Railroad Company, or bearer. The bonds are in the usual form, and recite that they are issued "pursuant to an order of the county court of Jackson county, made at the June term, 1871, of said court, and authorized by a vote of the people of the district hereinbefore described, by virtue of an act of the general assembly of the state of Missouri, entitled 'An act attaching certain territory to the town of Westport to enable said town to take stock in a railroad,' approved March 18, 1871."

The agreed statement of facts filed in the case shows that on the seventeenth day of April, 1871, the county court of Jackson county, on petition of 47 citizens and tax-payers of the district, established by the act of the eighteenth of March, 1871, made an order for an election submitting to the voters of the district a proposition to subscribe $25,000 to the capital stock in the Kansas City & Westport Horse Railroad Company in bonds; that an election was held on the sixteenth of May, 1871, and that two-thirds of the qualified voters voted in favor of the proposition; that the amount of stock voted was subscribed; that no stock certificate was issued, but that such issue on demand was refused by the horse railroad company; that Jackson county never voted the stock; that the stock was sold and assigned by Jackson county for $12,000, which was applied in payment of part of the $25,000 of bonds issued first falling due; that the county court levied and collected taxes for a number of years in the district to pay the interest coupons, and that the same were paid for the years 1872, 1873, and 1874; that no levy of taxes has taken place since; that the bonds were issued under the acts of March 23, 1868,

and March 18, 1871, and were received by the horse railroad company, and the proceeds thereof applied to the construction of the road; that the plaintiff is a *bona fide* holder without notice.

Two questions are raised and relied on as defences: First, the unconstitutionality of the act of March 18, 1871; and next the want of power under the law to issue bonds by Jackson county for the newly-organized district.

Regarding the constitutionality of the act, we are first referred to the case of *Wells* v. *City of Weston*, 22 Mo. 384, in which the supreme court holds that the legislature cannot authorize a municipal corporation to tax for its own local purposes lands lying beyond the corporate limits.

Regarding this decision it is only necessary to say that there is no attempt made on part of the legislature, in the act under consideration, to authorize the town of Westport to levy a tax outside of its corporate limits for its own local purposes, but the intention of the law is to erect a district of which the town of Westport itself is to be a part. The taxes to be levied are to be levied on the property of the district, and for the use and purposes of the district, so that the case cited, admitting it to be good law, has no application.

A more serious question arises here, as in the *Strip Bond Cases*, namely, can the legislature, for the purpose of enabling the people occupying a designated territory to aid in public improvements, erect them into a *quasi* corporation, and authorize them, or the county for them, to issue bonds? In the case of *Ogden* v. *Davies County*, decided in this court, among other questions the one here suggested was considered, and the conclusion arrived at that there existed no constitutional prohibitions in Missouri against the exercise of the power claimed. In the case mentioned a strip of country had been designated on each side of the Platte City & Fort Des Moines Railroad, authorizing those residing within the strip to vote and subscribe stock. This was done in part of Davies county, through which the railroad passed. Bonds were issued, and litigation arose about them, and, though the case was decided against the bondholders and the validity of the bonds, it was upon other grounds than the one under consideration. The judges were opposed in their opinion on a number of questions, and on account of the doubts prevailing with the judges the case was certified to the supreme court of the United States, where the case is now pending. As now advised, it is held that the legislature of Missouri had power to attach outside territory to the territory of the town of Westport, and erect the territory so attached, together

with the territory of the town, into a district, and authorize the district so formed to vote stock, and issue bonds in payment thereof. Whether it did so, and under what limitation, will be considered after disposing of another constitutional question raised.

The constitution of 1865, in force when the act under consideration was passed, provided that every law enacted shall relate to one subject only, and that shall be expressed in the title. The title of the act of March 18, 1871, is "An act attaching certain territory to the town of Westport to enable said town to take stock in a railroad." It is argued that if the intention of the act was to erect a district, then the title of the act fails to specify its object. What was in the legislative mind at the time of the passage of the act must be gathered from what was sought to be accomplished. A certain territory lay between the corporate limits of Kansas City and Westport. The horse railroad, for the purpose of connecting these places, was to run over this territory. Whatever of benefits were to accrue from the improvement would be shared in by this territory, and hence it was deemed proper that it should share in the burdens, if any. A district was erected so that a tax for the designated purpose might be levied and collected. The erection was an incident, though a necessary one, to the main object. As the main object can be gathered from the title of the act, it must be held not to be invalidated by the constitutional provision cited. The provision requiring the object of the act to be stated in the title is found in nearly all modern constitutions, and is directed against the vicious practice of embodying numerous objects in an act, and thus passing objectionable measures without being discovered on reading by the title only. When such acts come under review in courts, the provision cited is properly applied with strictness. A provision that all bills shall be read at length before final passage, now found in most constitutions, has given additional safeguards against fraudulent legislation, and made it unnecessary, except in special cases, to construe the provision with strictness. Under these views we deem the title of the act sufficiently expressive of its object to avoid the constitutional objection raised.

There remains for consideration the question of authority; that is, had the county court of Jackson county power under then-existing laws to issue the bonds? It must be admitted that this question is not without its difficulties. While the decisions of the United States court are that the bondholder is not bound to look beyond the power to issue the bonds, it may not be unjust, or even exacting, to say to him, this much at least you shall do, and that courts will uphold this

rule with the same strictness with which they have maintained the other.

The first section of the act of the eighteenth of March, 1871, after describing the newly-erected district, states the object of the act to be to enable the town of Westport to subscribe stock to a horse or street railroad, and to levy a tax upon the real and personal property within the district for the payment of such subscription, and for no other purpose, said taxes not to exceed one-half of one per cent., and the subscription not to exceed $25,000. No direct power to issue bonds is here found.

The agreed statement of facts puts the assessed value of the district at $200,000, the taxes whereon, at half per cent., would be $1,000 a year, just sufficient to pay the interest on $25,000 at 4 per cent. Thus no effective aid could have been rendered in the way of forwarding the improvement contemplated, if the law is construed so as to exclude the issuing of bonds.

The second section of the act provides that "said district, in subscribing to a horse or street railroad company, and in voting taxes to be levied for the same, shall be governed by the law regulating the subscription to railroad companies of municipal townships." This so-called township-aid act of March 23, 1868, here referred to, contains provisions aside from the voting and levying of taxes; also for the issuing of bonds to pay such subscriptions. It seems that from abundant caution this township-aid act was amended by the act of March 24, 1870, and its provisions made applicable to portions of municipal townships to vote and subscribe stock. Does the act of March 18, 1871, by its reference to the act of the twenty-third of March, 1868, so far make the latter act and its amendment a part of the law, so as to furnish authority to the county of Jackson to issue bonds to pay subscriptions to the horse railroad? That it has been so construed by the parties interested there can be no doubt. The order of the county court directing the election to be held submits to the voters, among other things, the question of the issuing of bonds in payment of the subscription, and does so in exact conformity to the municipal township-aid act, which authorizes the issuing of bonds, if approved, by a two-thirds vote. In the furtherance of justice it must be held that the act of the eighteenth of March, 1871, so far made the act of March 23, 1868, a part, as to authorize the issuing of the bonds. Here the county of Jackson, through its legally-constituted authority, the county court, subscribed stock. It has sold and assigned this stock, and with the $12,000, proceeds of the sale,

paid part of the bonds issued. The town of Westport and the district of which it constitutes a part have accomplished the object of constructing a horse railroad, and are enjoying its benefits. They have recognized the bonds and given them value by paying part of them, and the interest on the whole for a number of years. To turn around now, after all this, and say no power to issue the bonds existed, savors of injustice not to be tolerated or upheld by the court, unless bound to do so under the strict letter of the law. Any doubt as to the proper construction of the act must be solved in favor of good faith. If the question was on the issuing of an injunction, or other proper remedy, to prevent the issuing of the bonds for a want of power, any doubt as to a proper construction of the act would be solved against the exercise of the doubtful power.

Under the views entertained by the court the bonds are declared valid, and the judgment will be for plaintiff.