The opinion of the court was delivered by
Horton, C. J.:
The principal question in this case is, whether the estate of the bank can be charged with the damages resulting to Ellis, plaintiff in error, from the failure and inability of the receiver of the bank to comply with the .terms of the contract executed December 31, 1877. If the receiver exceeded his authority in executing the contract, plaintiff in error was not entitled to recover in the court below, and therefore cannot complain that the trial court erred in the amount for which it rendered judgment in his favor. The act of congress as embraced in the United States Revised Statutes of 1873 — 74, to provide a national currency, etc., and which establishes those associations for the carrying on the business of banking now known as our national banks, provides in section 5234 as follows:
“On becoming satisfied, as specified in sections five thousand two hundred and twenty-six and five thousand two hundred and twenty-seven, that any association has refused to *717 pay its circulating notes as therein mentioned, and is in default, the comptroller of the currency may forthwith appoint a receiver, and require of him such bond and security as he ■deems proper. Such receiver, under the directions of the •comptroller, shall take possession of the books, records and assets of every description of such association, collect all debts, dues and claims belonging t.o it, ánd upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and on a like order may sell all the real and personal property of such association, on such terms as the court shall direct; and may,-if necessary to pay the debts of such association, enforce the individual liability •of the stockholders. Such receiver shall pay over all money so made to the treasurer of the United States, subject to the ■order of the comptroller, and also make report to the comptroller of all his acts and proceedings.”
In accordance with this section, H. B. Cullum was appointed receiver of the bank, October 19, T 876, about fourteén- months prior to the execution by him of the contract sued on. On the 9th day of January, 1877, said receiver filed in the district court of the United States for the district ■of Kansas his petition praying for an order of the court authorizing him as such receiver to*sell certain real estate, bills receivable, overdrafts and other property that were mentioned ■and described in a certain schedule marked “Exhibit B,” and attached to his petition. Among other things in said schedule B, under the head of real estate, were the following: “ One-third interest in-a flouring mill in Wichita, Sedgwick county, Kansas, (incumbered $961,) part of J. C. Fraker’s transfer, $3,500.” In said schedule there was also mentioned one judgment in favor of the said H. B. Cullum, as receiver of the First National bank of Wichita, Kansas, rendered in the district court of the United States in and for the district of Kansas against Thomas & Wheeler, for the sum of $983.63, with 12 per cent, interest, and a judgment on a note of J. Hanson, in the district court of the United Statés for the district of Kansas, for the sum of $909.25, with 12 per cent, interest; one claim for attorneys’ fees in favor of Ruggles & Sterry and against Thomas & Wheeler, for $100, *718 assigned to said receiver; also a claim for an overdraft against Thomas, Wheeler & Co. in favor of said bank, for the sum of $56.44. Upon consideration of this petition, the-receiver was allowed and permitted by the court “to sell each and every item of personal property and real estate mentioned and described in said schedule B, attached to his petition, on such terms and in such manner as in his judgment may be for the best interests of the creditors and all interested in said bank and its assets.” On the 8th day of November, 1876, J. C.. Fraker assigned and transferred to Cullum an interest in a judgment rendered in the foreclosure of a mortgage upon real estate in Union county, in the state of Iowa, in his favor,, against one William Groesbeck, for the sum of $5,960, to secure and pay about $2,300 due the bank upon notes held by it, executed by W. A. Thomas & Co. On November 13,. 1876, the receiver bid in the mortgaged premises at sheriff's-sale, and on the 28th day of November, 1877, a sheriff's deed was executed to the receiver of the mortgaged premises. The consideration that Ellis agreed to pay to the receiver upon the contract sued on was $5,500. Two thousand dollars was to-be paid and satisfied as follo\vs: Ellis was to procure an assignment from S. B. Thomas and- E. A. Ellis to Cullum of $2,000 in the said judgment rendered in the foreclosure suit in Union county, Iowa, against the said William Groesbeck, in favor of J. C. Fraker, which assignment of $2,000 in said judgment the said Cullum agreed to receive as a payment of $2,000 upon the contract. The balance of the consideration,, to wit, $3,500, was to be paid upon the first day of May, 1878. When S. B. Thomas and E. A. Ellis came to assign their interest in said judgment, it turned out that they owned $3,462.63 therein, and on the 2d day January, 1878, they assigned all of their interest in said judgment to Cullum, as receiver of the bank, and he receipted on the contract as follows:
“(Eeceived, January 2,1878, of N. W. Ellis, an assignment of the Iowa judgment, by W. A. Thomas and Samantha B. Thomas, and Emma A. Ellis, amounting to $3,462.63, it being in full of the $2,000 payment mentioned within, and *719 the balance, $1,462.63, to apply in part payment due May 1, 1878. H. B. Culltjm,

Receiver of the First National Banh of Wichita, Kansas.”

It does not appear that the Iowa judgment, or the judgment rendered in the district court of Sedgwick county on May 29,1877, on the note of W. L. Eraker for $965.90, was mentioned or referred to in the petition filed by the receiver in the United States district court; and it is not claimed that any specific order was made by the United States court permitting the receiver to exchange, trade or barter the property of the bank for other or different property. The power conferred upon the receiver by the court authorized him to sell the personal property and real estate described in the schedule attached to his petition filed in the court, on such terms and in such manner as in his judgment was for the best interests of the creditors and all interested in the bank and its assets. This — nothing more. The receiver of a national bank, appointed by the comptroller under the section of the act of congress quoted, is the agent of the United States, and is limited as to his functions by the object of the receivership and the duties which it involves. (High on Receivers, § 360; Kennedy v. Gibson, 8 Wall. 498.)
Under the order of the court, such receiver may sell the real and personal property of the bank on such terms as the court shall direct, but he cannot sell in the absence of such an order, nor sell upon terms in conflict with the order. As the receiver in this case did not apply for an order to sell or dispose of the judgment on W. L. Fraker’s notes, supposed to amount to over $900, any attempted sale thereof, or any agreement concerning a sale of it, was in excess of his power as receiver, and therefore not binding upon the estate of the bank. Without the order of the court, the receiver had no authority in his official capacity to buy the Iowa judgment or any interest therein, nor could he under the order of the court permitting him to sell the property of the bank, exchange, trade or barter it for other property. Nor could such receiver charge the estate of the bank by any executory *720 ■contract of his unless he was authorized so to do by the provisions of the national banking act and the order of a court of competent jurisdiction obtained under the terms of said act. No application was made by the receiver to the court for permission to execute an agreement of the character of the one sued upon; therefore in the absence of such an order the estate cannot be charged for damages resulting from the failure or inability of the receiver to convey or deliver property not belonging to the bank, nor for his refusal to comply with covenants which he was without power as the receiver to make. As the power of a receiver of a national bank appointed- by the comptroller is limited, a person dealing with him in his official capacity is bound as a matter of law to have knowledge of his authority to act, and if contracts and agreements are entered into with the receiver in excess of his authority as conferred by law, the parties contract at their own peril, and the estate of the bank cannot be charged for the default or inability of a receiver acting outside of his functions as receiver and beyond the duties which it involves.
In answer to the point that the receiver exceeded his powers, and that his action did not bind the estate, counsel for plaintiff refers to several decisions; yet none of these are strictly applicable. Livingston v. Pettigrew, 7 Lans. 405, was an action to make a receiver liable personally, on his covenant > that certain judgments and claims assigned by him were due and unpaid. The court says:
“But assuming that the covenant in question was void, because the receiver exceeded his powers, and that it did not bind the estate, the question arises whether he thereby rendered himself personally responsible for a breach of it. I am inclined to think that he did not, and that the instrument itself showing that the act was done as a receiver, it cannot under any circumstances be construed as a personal covenant. The party who took the assignment knew all about its contents as they appeared, and it is presumed he knew the law and it is fair to assume he knew also that the covenant was void upon its face. If such was the law, he therefore has no valid *721 grounds for claiming he has in any way been misled or deceived.”
Applying this doctrine to the case at bar, plaintiff has no cause for complaint. The other decisions are to the effect that corporations have no right to violate their charters, but they have capacity to do so and to be bound by their acts, when a repudiation of such acts would result in a manifest wrong to innocent parties. This principle does not control the acts of a receiver, whose powers are so strictly defined and limited by law as those of a receiver appointed by the ■comptroller of the currency, so far as to make his estate liable for acts of his in excess of his powers.
The trial court found in favor of the plaintiff in the sum •of $587.70. Upon what theory this judgment was rendered we caonot tell from an examination of the record. As it appears, however, from the evidence, that the estate of the bank realized about $500 from the sale of the land in Iowa, obtained under the judgment of foreclosure, we suppose the court thought best, under the circumstances, that the plaintiff should recover back the amount actually realized by the bank, notwithstanding the receiver exceeded his authority in executing the contract. In other words, the court seems to have thought that the estate of the bank ought not to retain the benefits of a contract, executed by the receiver in excess of his power. The defendant takes no exception to this judgment, and under the conclusion reached by us, plaintiff has no reason to complain thereof.
The judgment of the district court must be affirmed.
All the J ustices concurring.