R. E. Beckham, Receiver, v. E. L. Shackelford et al.

No. 473.

1. **Receiver of National Bank—Power to Allow Offset.**—Sections 5234 and 5242 of the Revised Statutes of the United States, relating to receivers of national banks, empower and require them to collect all debts, dues, and claims, and, under order of court, to compromise doubtful debts; and declare void any application of the assets in payment of creditors after the commission of the act of insolvency. The

receiver of a national bank, without any order of court, allowed a certificate of deposit issued to S. and by him transferred to· P. after the act of insolvency, to offset a note due by P. and another to the bank. *Held*, that such allowance was void, and would not bar a suit by the receiver against P. on the note.

2. Same—Estoppel.—P. was in fact a surety on the note to the bank, and held certain security against the principal, which he released on the faith of the offset and of the surrender of the note to him by the receiver, and the receiver knew that he was a surety holding such security. *Held*, that these facts could not estop the receiver from collecting the note from P.

APPEAL from El Paso. Tried below before Hon. F. E. HUNTER.

*R. E. Beckham* and *P. F. Edwards*, for appellant.—1. No estoppel can arise out of any act forbidden by law, and as the powers and duties of a receiver of a national bank appointed by the Comptroller of the Currency are governed by positive law, and preferences prohibited, an attempt by a receiver to give a preference to a creditor can not be set up as an estoppel.

As to transaction being void: Rev. Stats. U. S., secs. 5234, 5236, 5242; Scott v. Armstrong, 146 U. S., 499; Bank v. Colby, 88 U. S., 613; Snyder Sons Co. v. Armstrong, 37 Fed. Rep., 18; Ellis v. Little, 27 Kan., 707; Gluck & Becker Receivers of Corp., sec. 63, p. 215, note 2, citing 37 Barb. (N. Y.), 231; Id., sec. 99, p. 436, and note, citing Bank v. Taylor, 56 Pa. St., 14.

As to estoppel arising out of act forbidden by law: In re Comstock, 3 Sawyer, 218; Rosebrough v. Ansley, 35 Ohio St., 107; Bank v. Slemmons, 34 Ohio St., 142; 6 Laws. Rights and Rem., sec. 2701.

2. The powers and duties of the receiver of an insolvent national bank appointed by the Comptroller of the Currency are prescribed by positive law, and such receiver is the agent of the bank, its stockholders, and creditors to collect its assets, and is prohibited by positive law from giving any creditor a preference, and a debt due to the bank will not be paid or satisfied by his act in allowing the same to be set off against a debt due by the bank assigned to the debtor simply for collection, after its suspension. Same authorities as above, and also Gluck & Becker Receivers of Corp., sec. 71; Colt v. Brown, 12 Gray (Mass.), 233.

*W. B. Brack*, for appellees.

JAMES, CHIEF JUSTICE.—R. E. Beckham, in the capacity of receiver of the El Paso National Bank, sued appellees on a note signed by E. L. Shackelford and Millard Patterson, originally for $700, dated April 19, 1893, due four months thereafter, with 10 per cent interest per annum (reduced by payment of interest to August 19, 1893, and a credit of $291.27 in November, 1893), alleging, in substance, that on September 2, 1893, he was appointed by the Comptroller of the Currency receiver of said bank, which had suspended on account of in-

solvency, on August 2, 1893.   That of the assets of said bank, said note came into his hands as receiver.   That defendant Patterson, for the purpose of obtaining an unlawful advantage over other debtors and creditors of the bank, did, in August, 1893, procure from D. Storms a transfer to himself of a certificate of deposit issued by the bank to said Storms for $618, and did present the same to plaintiff under oath as owned by Patterson, and that plaintiff, relying on such representation and believing that Patterson was entitled to have the same set off against the said note, surrendered the note to Patterson, who has the same in his possession.   That Patterson was not the owner of said certificate, nor entitled to the offset, and held the certificate in trust for Storms, to whom the bank was indebted in the amount thereof.   The prayer was that plaintiff have judgment for the balance due on said note, with interest and attorney's fee as therein stipulated.

The answer was a general denial, and a plea of payment by reason of said certificate of deposit.   In addition, the defendant Millard Patterson interposed a special plea, the effect of which was that in December, 1893 (when the note was satisfied), plaintiff knew that he, Patterson, was in fact surety on said note for Shackelford, although both appeared as principals; and that he, Patterson, to secure himself against loss, then held a lien given him by Shackelford on some lands in Travis County, which plaintiff likewise knew, and that after the note was delivered to him, said Shackelford procured a loan on said lands, and he, Patterson, believing that he was discharged from liability on the note by its satisfaction and surrender as aforesaid, relinquished his lien, and has in good faith become placed in such position that he would have no protection against Shackelford were judgment now rendered against him; wherefore plaintiff is estopped from asserting the claim sued on.   The case was tried by the court, and judgment rendered for the defendants.

From the conclusion we arrive at, it is not necessary that we should consider the third assignment of error.

The case made in the evidence is presented in its strongest light in support of the judgment by the testimony of Millard Patterson.   He states, substantially, that the bank suspended on August 2, 1893; that the receiver took charge in September, and that a few days after the suspension, Storms indorsed the deposit certificate to him, in order that he might collect the dividends; that he presented it to the receiver for the purpose of getting the receiver's certificate concerning it, showing that he, Patterson, was entitled to the dividends arising from it; that the receiver took a memorandum of it for the purpose of ascertaining if Storms owed the bank anything; that afterwards he went to the receiver and found out from him that Storms owed nothing to the bank, but that he, the receiver, had discovered that the witness was on Shackelford's note for a balance of $450.15; that witness then stated he had entirely forgotten he was on such a note, and told the receiver that the affidavit he had made in connection with the certificate ought to

be made to read that there were no offsets against the claim except what witness owed on the Shackelford note, and it was so amended; that witness then explained that he was worth $450.15, and that the bank could make the money out of him, and that he did not wish Storms involved in the matter in any way; that the receiver understood the matter fully as detailed by the witness; that Shackelford did not wish Patterson to pay his debt, and suggested that he would see the receiver about applying the certificate of deposit to it, when Patterson said that if the receiver claimed that he could hold that amount against the other, he could do so, so far as his (Patterson's) right was concerned.

Shackelford reported that he had seen the receiver, and Patterson then called on the latter, who stated that he had considered the matter and had concluded to take the amount of the note out of the certificate and give a receiver's certificate for the balance, which was done; that prior to this, and during the transaction, witness had informed the receiver that he was secured by a deed of trust given him by Shackelford on lands in Travis County; that witness at once informed Shackelford, who had been talking about getting a loan on the Travis County land, of the adjustment; on the same day Shackelford or a Mr. Courchesne called on witness about the matter, and Courchesne agreed to make Shackelford a loan, and thereupon witness, who was an attorney, drew the papers and also prepared and delivered a release of his lien on the property; Shackelford then went off with Courchesne and returned with $430, which he gave to Storm; after which witness gave Storm a transfer of the certificate the receiver had issued him.

According to the testimony of the receiver, which is in this regard uncontradicted, he had no authority in reference to adjusting matters appertaining to the bank, except that derived from the law governing such receivers and his instructions from the Comptroller.

The powers of a receiver of a national bank are limited. He is vested with all its assets, which are to be converted into money and distributed among the creditors. The object sought to be accomplished is their distribution fairly and without preferences. Bank v. Blye, 101 N. Y., 303, and cases cited.

Section 5234 of the Revised Statutes of the United States reads: * * * "Such receiver under the directions of the Comptroller shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and upon the order of a court of record of competent jurisdiction may sell or compound all bad or doubtful debts, and on a like order may sell all the real and personal property of such association on such terms as the court shall direct, and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders, and such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the Comptroller, and also make report to the Comptroller of all his acts and proceedings." It will be seen from this provision that the receiver is required to collect

all debts, dues, and claims, and is without power to compound debts, unless an order of the proper court is had authorizing it. Ellis v. Little, 27 Kan., 707.

Section 5242 declares utterly null and void any application of the assets with a view to the preference of one creditor to another, made after the commission of an act of insolvency, or in contemplation thereof. The plain meaning and intent of the act would place this restriction on the receiver after his appointment.

That the certificate of deposit which Patterson took after the suspension of the bank, particularly upon the evidence that Patterson held it for Storm, was not a legal setoff against the obligation of Patterson to the bank, admits of no question. Bank v. Taylor, 56 Pa. St., 14. Had Patterson acquired it by absolute transfer after the suspension, it would have been the same. In either case, its allowance as a setoff was in fact a surrender of a claim due the bank without payment, and a preference given to the creditor Storm. As stated in Scott v. Armstrong, 146 United States, "a claim sought to be offset, if acquired after the act of insolvency, is far otherwise, for the rights of the parties become fixed as of that time, and to sustain such a transfer would defeat the object of these provisions. The transaction must necessarily be held to have been entered into with the intention to produce its natural result, the preventing of the application of the insolvent's assets in the manner prescribed;" citing Bank v. Taylor, 56 Pa. St., 14; Colt v. Brown, 12 Gray, 233.

The suspension of the bank on August 2, 1893, was an act of insolvency within the meaning of the act. Bolles' Bank Act and Meaning, sec. 413.

As the power of a receiver of a national bank appointed by the Comptroller is restricted, a person dealing with him in his official capacity is bound as a matter of law to have knowledge of his authority to act, and if contracts and agreements are entered into with the receiver in excess of his authority as conferred by law, the parties contract at their own peril, and the estate of a bank can not be charged for the default or inability of a receiver acting outside of his functions as receiver and beyond the duties it involves. Ellis v. Little, 27 Kan., 707.

An application of these principles to the facts of this case renders it wholly immaterial that the receiver may have allowed the setoff and surrendered the note of his own volition, and knowing the facts to have been as Mr. Patterson states them. The receiver had no power to permit it knowingly or otherwise, and it is not pretended that the authority derived by him from the law had been enlarged by an order.

The defendants were charged with knowledge of this want of power in the receiver, and it follows that defendant can not assert against the estate of the bank that he was misled into parting with his lien.

The allegations in the petition of wrongful conduct on the part of Patterson, which led the receiver to believe that Patterson was the

owner of the deposit certificate at the time of the transaction, are also immaterial. There was sufficient other facts alleged that made it appear that the act was unauthorized and void. We see no reason why the plaintiff should not recover, and the judgment will be reversed and here rendered for the appellant.

*Reversed and rendered.*

Delivered November 14, 1894.