Dunn vs. Buckley and another.

## Dunn vs. Buckley and another.

*November 6 — November 21, 1882.*

HOMESTEAD: MORTGAGE. *(1) Homestead right favored. (2) Mortgage of homestead cannot be enlarged or changed by husband. (3) Mortgage of homestead as collateral security: application of payments. (4) Future advances.*

1. The homestead right is favored in the law, and when it is made security for debt, by the signature and consent of the wife, it is favored even more than a surety or the security given by a third person.

2. The husband, without the consent of the wife, cannot mortgage the homestead or enlarge or extend the terms of a mortgage thereon, or prolong the statute of limitations upon such a mortgage, or renew it or materially change it or its legal effect, or revive it after it is once paid or otherwise discharged.

3. Where a mortgage of a homestead has been given as additional and collateral security to a chattel mortgage, the property embraced in the latter must first be applied to the *precise* debt secured by the mortgage of the homestead before that is resorted to, and upon a sale of the mortgaged chattels the mortgage of the homestead is paid and satisfied to the extent of the proceeds of the sale.

4. Where a mortgage of a homestead contains no provision for future advances, and there is no agreement or consent by the wife of the mortgagor that it should cover such advances, it will be held to have been made to secure past indebtedness alone, if there was any to which it could apply.

APPEAL from the Circuit Court for *Dane* County.

Action for the cancellation of a mortgage and to have the same declared to be fully satisfied. The facts are stated in the opinion. The plaintiff appealed from a judgment dismissing the complaint.

For the appellant there was a brief by *Sloan, Stevens & Morris,* and oral argument by *Mr. Sloan.*

*H. W. Chynoweth,* for the respondents.

ORTON, J. William Dunn, the husband of the plaintiff, was the owner of valuable omnibus property, and was en-

gaged in running omnibuses in the city of Madison, and had borrowed at different times a considerable sum of money of *William Buckley*, one of the defendants, to be used in his business, and on the 16th day of November, 1872, he gave *Buckley* a bill of sale on all said omnibus property to secure the same, and perhaps future advances, and such bill of sale was duly filed as a mortgage. In a short time *Buckley* became dissatisfied with such security, and exacted of Dunn as additional and collateral security thereto a mortgage upon his house and lot, which was then and continued to be his homestead; and on the 18th day of January, 1873, Dunn, together with his wife, the said plaintiff, executed such mortgage *nominally* to *Jane Buckley*, the wife of said *William*, but for his benefit, and to secure the *nominal* sum of $1,000, but really and in fact the said advances already made and secured by the bill of sale. At the time this deed was given, such advances amounted to the sum of over $800. There is no provision in this mortgage for any future advances, and there was no proof that there was any contemporaneous agreement on the part of Dunn that the mortgage should secure any future advances, and there was no proof of any agreement at any time on the part of the plaintiff to that effect. Afterwards there was more money advanced by *Buckley* to Dunn, so that on final settlement between them, July 23, 1874, there was due from Dunn to *Buckley* the sum of $1,306.01. In May, 1874, *Buckley* consented to the sale of the omnibus property to Dorn for the sum of $2,000, and received as a part of the proceeds thereof the sum of $1,070.01, as appears by his account rendered.

These are the main and the only important facts to be considered or necessary for the determination of the question whether this mortgage of the homestead was paid and satisfied, and ought to be so declared of record. Since the trial, William Dunn, the husband, has died, and his widow, as heir, brings this suit. The particular capacity in which she sues

is, perhaps, immaterial, for her rights in the premises are determined by the relation she held when the mortgage was given and when it is alleged it was paid.   There are certain obvious principles arising from and applicable to the peculiar relation of the parties, and the homestead rights of the plaintiff, which, in their application to these facts, would seem to remove all difficulty from the solution of this question: (1) The homestead right is favored in the law, and when it is made security for debt by the signature and consent of the wife, it is favored even more than a surety or the security given by a third person.   To establish this proposition it is only necessary to consider the equitable rule established and recognized by courts, and by this court before the statute to that effect in this state was enacted, that when the homestead is embraced with other lands in a mortgage, such other lands shall be exhausted before resort is had to the homestead.   *James v. Dow*, 18 Wis., 241; *White v. Polleys*, 20 Wis., 503; *Lloyd v. Frank*, 30 Wis., 306; *Boyd v. Ellis*, 11 Iowa, 97; *Lay v. Gibbons*, 14 Iowa, 377.   Of course, this principle is broad enough to embrace all cases where the homestead is made security with other property, or security collateral to the security upon other property.   *Spear v. Evans*, 51 Wis., 42.   This makes the analogy between the wife whose consent or signature is essential to the validity of such a security and a common surety very close, and indeed she is more highly favored and preferred.   The creditor cannot exact or compel such a security, and the husband cannot give it, and it is by the free and voluntary act of the wife alone this right, so protected in the law, can become subject to the payment of debts.   (2) The husband, without the consent of the wife, cannot mortgage the homestead, or enlarge or extend the terms of any such mortgage by his own agreement, or prolong the statute of limitations upon it, or renew it, or materially change it in any respect, or its legal effect, or revive it, after it is once paid or otherwise discharged.

Smyth on Homest., § 271; *Barber v. Babel*, 36 Cal., 21; *Thompson v. Pickel*, 20 Iowa, 490; *Spencer v. Fredendall*, 15 Wis., 666; *Campbell v. Babcock*, 27 Wis., 512. (3) This mortgage cannot be made to secure over $1,000 under any circumstances without the consent of the plaintiff.

In applying these principles to this case — *First*, this mortgage, being additional and collateral security to the bill of sale, the property embraced in the bill of sale must first be applied to the payment of the *precise* debt secured by this mortgage before resorting to the homestead. Brandt on Suretyship, § 291. It follows that if *Buckley* has voluntarily released the security he held by this bill of sale to the extent of $1,000, to that extent he has lost the security by this mortgage on the homestead. The wife has the right to have the property covered by the bill of sale first applied, like any other surety. *Second*, when *Buckley* consented to the sale of the omnibus property covered by this bill of sale, to Dorn, it was his duty to see that its proceeds were strictly applied to the payment of the debt secured by this mortgage, and if he did not do so it was his own fault, and the homestead mortgage must be held to have been at that time paid and satisfied to the extent of the proceeds of that sale, to which *Buckley* was entitled by virtue of his bill of sale. *Third*, it being conceded that the homestead mortgage was given as collateral to the bill of sale, and that the mortgage contains no provision for future advances, and there being no agreement or consent by the plaintiff, the wife of the mortgagor, that it should have any such effect, it must be held that the mortgage was made to secure *past* indebtedness alone, if there was any to which it could apply. 1 Powell on Mortg., 309. There having been advances by *Buckley* to Dunn before that time of over $800, covered by the bill of sale, that must be held to be the only indebtedness secured by the mortgage, and when that was paid, the mortgage, as such collateral security, was satisfied. But, allowing the

mortgage to be valid for any future advances, they could not exceed, together with the past indebtedness, the $1,000 limit of the mortgage, and, according to *Buckley's* own account rendered, he received from the proceeds of the sale to Dorn $1,070.01, which more than paid the mortgage.

When the learned circuit judge found, as he did, as a fact, "that *William Buckley* had, previous to the 23d day of July, 1874, received more than sufficient money to pay, if so applied to pay," the law made such application of the payment, and no agreement between Dunn and *Buckley* could change or defeat it. The testimony of both Dunn and Tenney supports the true legal theories and conclusions, as above stated, and the agreement between Dunn and *Buckley* on the 23d day of July, 1874,— without the participation or consent of the plaintiff,— to treat the balance they figured up and found, after paying all other creditors out of the proceeds of the sale to Dorn, as still secured by the mortgage, confirms them beyond question. That agreement, although of no effect whatever to extend the mortgage, in itself shows that *Buckley* deemed it necessary, because, without it, the mortgage was already satisfied. As we understand the findings, the circuit court gave full effect to this subsequent agreement, which, by all authorities, could not affect the homestead right any more than if made by a stranger instead of her husband. In any reasonable and legal view of the case, the mortgage was fully paid and ought to be discharged of record, according to the prayer of the complaint.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction that judgment be rendered in accordance with this opinion.