(69 N. W. Rep. 202.)

---

## August F. Kuhnert *vs.* W. S. Conrad.

Opinion filed November 19th, 1896,

### Mortgage—Homestead Acquired Subsequently.

M. and R., to secure a debt due to A., jointly executed and delivered a mortgage to A. upon a certain city lot, located in the City of Fargo, N. D. When the mortgage was delivered, M. and R. were seised, as tenants in common, of the fee-simple title to said lot, and said lot was wholly unincumbered except by said mortgage. When the mortgage was delivered, M. was a married man, but had never resided upon said lot, but did live with his family upon another lot in said city. Subsequent to the delivery of the mortgage to A., M. moved into a building situated on said lot, and established his residence and home therein, and continued to reside in said building with his family until after said lot had been sold to A., at a foreclosure sale had pursuant to said mortgage. There was no redemption made from the foreclosure sale. *Held*, that M. and his family acquired homestead rights in and to said premises, but said rights were wholly subordinate to the superior rights acquired by A. as purchaser at the foreclosure sale.

### Wife Interest Subject to Mortgage.

*Held*, further, that the wife of M. had no homestead rights as against the mortgagee, which would entitle her to be made a party defendant in an action brought by A. to foreclose the mortgage; nor had she any homestead rights as against A. after the title passed from her husband, and ripened in A., by a regular foreclosure of a valid mortgage.

### Abandonment of Homestead.

M. and his family removed from said homestead to another state in June, 1888, and since such removal, and until the trial of this action, have never resided in this state, and so far as appears in the record, have never manifested an intention to return to this state to reside. About four years subsequent to

such removal from this state, M. and his wife, by a deed of quit-claim, conveyed all their right, title, and interest in said lot to the defendant. *Held* that, prior to the execution of said quit-claim deed, said removal of M. and his family from this state, and their continued residence in another state after such removal, operated as an abandonment and forfeiture of such homestead rights as they had acquired in and to said lot and premises, and that no homestead rights passed to the defendant by said deed of quit-claim.

Appeal from District Court, Cass County; *McConnell*, J.

Action by August F. Kuhnert against W. S. Conrad. From a judgment for plaintiff, defendant appeals.

Affirmed.

*Ball, Watson & Maclay*, and *Charles E. Joslyn*, for appellant.
*Leonard A. Rose*, for respondent.

WALLIN, C. J.   This action was brought to determine a certain homestead claim of the defendant to lot 2 of block 2 in Keeney & Devitt's addition to the City of Fargo, which claim the complaint alleges is unfounded in law.   The action was tried without a jury, and, after filing its findings of fact and conclusions of law, the District Court entered judgment upon the findings in favor of the plaintiff, declaring the said claim of the defendant to be groundless in law, and null and void.   Defendant appeals from said judgment.   The evidence is not brought to this court.   The only error assigned here is that the conclusions of law found by the trial court, and the judgment, are not warranted by the facts found.

The facts which, in our opinion, are decisive of the case in this court, are as follows:   On the 3rd day of June, 1884, one Frank B. McCauley and one Reynolds each owned an undivided one-half interest in, and had a fee-simple title to, the lot in controversy, and which is above described, viz. lot 2.   On the date above stated, said McCauley and Reynolds (said lot being then wholly unincumbered) executed and delivered their mortgage to one William Aylmer upon said lot, to secure a debt of $2,000. The mortgage was duly recorded.   At the time the mortgage was delivered, and continuously thereafter up to the 20th day of

November, 1888, said premises were used by McCauley and Reynolds, as a theatre and saloon, and for no other purpose whatever. At the time said mortgage was delivered, and long prior thereto, said McCauley was a married man, and lived with his wife, one Florence A. McCauley, on lot 11 of block 33 in said addition to the City of Fargo, and continued to reside on said lot 11 until the year 1886, when they removed to lot 3 in said block 2 in said addition, which lot is contiguous to and adjoins the premises in controversy. Said McCauley and Reynolds each owned an undivided one-half interest in said lot 3, from a period long prior to the date of the delivery of said mortgage, and until the same was foreclosed, as hereinafter stated. Default having been made in the payment of the debt secured by the mortgage, an action to foreclose said mortgage was instituted, wherein said Aylmer was plaintiff, and said Frank B. McCauley and said Reynolds were the sole defendants. A judgment of foreclosure was entered, and pursuant thereto, and on due notice of sale, said lot 2, on November 9, 1887, was sold, and was bid in by said William Aylmer. Said premises were not redeemed from said sale, and, pursuant thereto, a sheriff's deed of said premises was, on November 20, 1888, issued, and delivered to William Aylmer, the purchaser. On the 18th day of October, 1889, William Aylmer sold said lot 2 to this plaintiff, and, by a deed of warranty, conveyed to plaintiff all the right, title, and interest obtained by him under the foreclosure sale. By virtue of said sale and deed of warranty, the plaintiff took possession of lot 2, and ever since that date has had quiet and peaceable possession of the same. The building on lot 3, into which McCauley and his wife moved in 1886, was not erected until some time subsequent to the erection of the building on lot 2, which lot (lot 2,) as has been stated, was used exclusively as a saloon and theater by McCauley and Reynolds. In February, 1888, Frank B. McCauley went to Spokane, in the State of Washington, where he was followed by his wife and family in June, 1888; and there the family resided for about three years continuously thereafter, and during said

period Frank B. McCauly exercised the right of suffrage, by voting at a general election held at Spokane. The court also finds that, during said period of residence at Spokane, "said Florence A. McCauley ceased to regard Fargo, aforesaid, as her home." Either in 1890 or 1891 the McCauley family removed to Aberdeen, in the State of Washington, where they resided continuously until the year 1893, and where said Frank B. McCauley again exercised the right of suffrage. Since September, 1893, the McCauley family has continuously, and until the present time, resided at the City of Ashland, in the State of Wisconsin. About four years after Frank B. McCauley was joined by his wife and family at Spokane, as before stated, to-wit, on June 2, 1892, a quitclaim deed of conveyance was made of the premises in question (lot 2,) whereby McCauley and his wife, for an expressed consideration of one dollar, conveyed to the defendant in this action all the right, title, and interest of the McCauleys, or either of them, to said lot 2. The defendant bases all of his rights in the premises upon this quit-claim deed. The building on lot 3, which, as has been stated, was erected later than the building on lot 2, used as a theater and saloon, was occupied as follows: "The ground floor was used as a billiard room and office, and the second floor was used by McCauley and his family as a place of residence, from some time in 1886, to the month of June, 1888. Lots two (2) and three (3) constitute less than one acre in area; and at all times after the erection of the building upon lot three (3,) as above stated, two openings existed between the building on lot three (3,) and the building on lot two (2.) One of said openings or doors was on the first floor, and the other on the second floor. On account of the existence of such openings and connections between the buildings standing, respectively, upon lots two (2) and three (3,) a homestead right is claimed by the defendant in behalf of the McCauleys, in lot two (2,)—the premises in question,—as appurtenant to lot three (3,) upon which last mentioned lot the McCauleys resided for the period of time above stated, and during which period McCauley owned an

undivided one-half interest in said lots (2) and three (3). On the 15th day of August, 1887, and while living on said lot three (3,) McCauley and his said wife caused to be filed in the office of the register of deeds of Cass County a certain written declaration, wherein they designated said lots two (2) and three (3) as their homestead."

From the findings of fact which we have narrated, in substance, the trial court deduced the following conclusions of law: First, that, at the time the McCauleys made and delivered their quit-claim conveyance of lot 2 to this defendant, they had no right, title, or interest in said lot, and, consequently, that the defendant acquired no interest whatever by said deed of quit-claim; second, that the plaintiff was entitled to a judgment declaring that the plaintiff's title is good and valid, and free and clear of any cloud or incumbrance caused by said deed, or the record thereof.

We have no doubt or hesitation in saying that the legal conclusions of the trial court were entirely correct and proper. The conceded facts do not permit of doubt that, when the McCauleys executed their quit-claim deed of the premises in question, and upon which alone the defendant predicates his alleged interest in the premises, the McCauleys had definitely, and with no expectation to return, removed from the territory (now state) of North Dakota, and had, without any possible doubt, purposely given up and abandoned their residence in the City of Fargo, and had been out of the territory and state for a period of about four years before the deed was made. Not only is there no finding of a purpose on the part of the McCauleys to return to their residence in Fargo at any time after their removal to the State of Washington, in 1886, but the findings preclude any theory that such purpose existed. They were nonresidents at the time of the trial, and nothing in the record indicates any intention on their part to return to this state at any time. Their absence, therefore, from their former place of residence in the City of Fargo, exhibits a fixed purpose to live out of the state, and therefore a fixed purpose to finally abandon their former homestead premises

within this state. The fact of such abandonment, as well as the purpose to abandon, exist in this case, and both are transparently clear and free from doubt. Nor does it matter that the McCauleys had in 1887, and some five years before, executing said quit-claim deed to defendant, caused to be filed in the register of deeds office in Cass County a writing whereby said lots were claimed or designated as their homestead. Whatever rights or advantages may result from filing such a declaration, there can be no doubt that it does not operate to preserve a homestead right for a single day after the homestead has been abandoned in fact and in intention. Abandonment is a mixed question of intention and fact, and each case will rest upon its own facts and circumstances; but in the case at bar there is no room for doubt as to either the intention or the fact. It is, moreover, in our opinion, quite doubtful whether one who actually has a homestead right, and no other right, in land, can transfer such right to a stranger by deed of conveyance; but it is quite unnecessary in this case to pursue this point further. The defendant is seeking, under the facts of this case, to redeem from the foreclosure sale, and bases his claim to redeem entirely upon the assumption that Mrs. Florence A. McCauley had a homestead right in the premises in question when the foreclosure took place, and that, by virtue thereof, she had a right, under the law, to redeem, and that her right to redeem has not been cut off by the foreclosure, for the reason that she was not made a party to the foreclosure action.

In making this claim, however, the defendant, in terms, concedes—and is forced to do so when he seeks to redeem—that the foreclosure was entirely regular, and that the purchaser at the sale acquired the fee-simple title vested in the mortgagors (McCauley and Reynolds) when the mortgage was made. This is tantamount to saying that the entire fee was by the foreclosure divested from McCauley and Reynolds, and that the purchaser became seised of the entire fee-simple title to the lot in question. That such foreclosure had this effect is not open to doubt; nor

can there be any question whatever that, at the moment the title passed to the purchaser under the sale, that moment the homestead right of the husband, at least, ceased to exist in the premises in question. The homestead rights of the husband rested upon the fact of his ownership, coupled with his residence upon the premises. When the ownership ceased, the homestead right of the husband—a mere possessory right, springing from ownership—ceased also. Mrs. Florence A. McCauley had no title or estate in the land. Her homestead rights, as in all similar cases, rested upon the marital relation, coupled with her husband's ownership of the fee. Her mere possessory right was founded upon her husband's ownership and her marital relation to him. When the foundation was removed by a valid transfer of the title from her husband to a stranger, her possessory right vanished at once. It is elementary that the forclosure of a mortgage relates back to the date of the execution and delivery of the mortgage, and operates to transfer to the purchaser at the sale the entire estate and interest which the mortgagor had at the date of the delivery of the mortgage, or at any subsequent date. When the mortgage in question was made and delivered, the entire fee-simple estate of the premises in question was vested in the mortgagors, and was not burdened by any homestead rights, and not otherwise incumbered. It follows, therefore, that the purchaser at the sale acquired a fee-simple title to the premises, free and clear from any homestead rights subsequently acquired by the mortgagor, or through him by his wife. This reasoning does not imply that the McCauleys never at any time acquired a homestead right in the premises; but it does imply that whatever homestead rights were acquired by them, from the inception thereof, inferior and subordinate to the paramount rights acquired by Aylmer under his mortgage, antedating the homestead rights attempted to be assigned by the McCauleys.

It follows from these considerations that if the McCauleys had never removed from the premises, and abandoned their homestead,—as they certainly did,—an action of ejectment could be

maintained by the plaintiff against them, or either of them, to remove them from the premises in question. It being conceded that the mortgage covered the entire estate, and that no homestead right existed in the premises when it was delivered, and further conceded that the mortgage was valid, and the foreclosure was regular, as to the mortgagors, it follows as a legal sequence that the mortgage was superior to any homestead right to the land subsequently acquired either by the mortgagor or his wife. The principles of law upon which our conclusions depend are so entirely elementary that we do not care to cite authorities in their support.

The judgment of the District Court will be affirmed. All the judges concurring.