(79 N. W. Rep. 851.)

---

PEOPLE'S STATE BANK OF LAKOTA *vs.* ELIZA A. FRANCIS.

Opinion filed May 1, 1899.

**Wife as Surety for Husband—Mortgage Covenant.**

Where F. executed certain promissory notes and a mortgage upon certain real estate belonging to himself to secure the same, and, at his request, his wife also executed the mortgage, and the mortgage contained an express covenant that the mortgagors would pay the debt thereby secured in accordance with the terms of said notes, but the wife did not sign the notes, and the mortgagee knew that the debt secured was the debt of F., the obligation assumed by the wife in the covenant contained in the mortgage was, to the knowledge of the mortgagee, that of surety for F.

**Receiver Chargeable with Knowledge of Bank.**

Where a receiver is placed in charge of the assets of a national bank, he stands, as to such assets, in the place of the bank, and is chargeable with knowledge of all facts known to the bank affecting the character of such assets.

**Extension of Time by Receiver.**

Such receiver has authority, upon sufficient consideration, to extend the time of payment of a debt owing such bank, where by so doing he can, in his judgment, strengthen the security he holds for the payment of such debt

**Extension of Mortgage.**

Section 4699, Rev. Codes, provides, among other things, that a mortgage can be "extended" only by an instrument in writing formally executed, but such provision has no reference to an extension of time for the payment of the debt secured by this mortgage. A mortgage is extended when it is made to stand for some debt or obligation not originally included therein.

Appeal from District Court, Cass County; *Pollock,* J.

Action by the People's State Bank of Lakota against Eliza A. Francis. Defendant had judgment. Plaintiff appeals.

Affirmed.

*J. E. Robinson, Templeton & Rex,* for appellant.

The burden of proving suretyship and facts entitling her to a discharge from liability rested upon respondent. *Slate Co.* v. *Burdick,* 60 Minn. 270, 62 N. W. Rep. 285; *Guderian* v. *Leland,* 61 Minn. 67. The giving and accepting of collateral security which does not fall due until a future date does not of itself extend the time or discharge the surety. There is no presumption on such a transaction that there was an agreement for an extension of time. Brandt, Suretyship and Guaranty, 319, 320; *Dugan* v. *Sprague,* 2 Ind. 600; *Mills* v. *Gould,* 14 Ind. 278; *Austin* v. *Curtiss,* 31 Vt. 64; *Remsen* v. *Graves,* 41 N. Y. 471; *Globe Co.* v. *Carson,* 31 Mo. 218; *German Inst.* v. *Vahle,* 28 Ill. App. 557; *Merriman* v. *Barker,* 12 Ind. 74, 22 N. E. Rep. 992; *Fireman's Co.* v. *Wilkinson,* 35 N. J. Eq. 160; *Schlager* v. *Teal,* 39 Atl. Rep. 963; *Fisher* v. *Denver Nat. Bk.,* 45 Pac. Rep. 440. Respondent was only released by the agreement if at all to the extent of the value of the property as to which the debt was extended. *Spencer* v. *Spencer,* 95 N. Y. 353; *Murray* v. *Marshall,* 94 N. Y. 611; *Travers* v. *Doer,* 60 Minn. 173, 62 N. W. Rep. 269; *Fallkill Nat. Bk* v. *Sleight,* 37 N. Y. Supp. 155; *Owings* v. *McKenzie,* 133 Mo. 323, 40 L. R. A. 154; *De Goey* v. *Van Wyk,* 66 N. W. Rep. 787; *Stewart* v. *Bank,* 74 N. W. Rep. 865; *Everly* v. *Rice,* 20 Pa. St. 297; *Saline Co.* v. *Bina,* 65 Mo. 63; Brandt (2d Ed.) 426. The attorney for the receiver being a mere agent to collect had no authority to extend the time. *Behrus* v. *Rogers,* 40 S. W. Rep. 419; *Ritch* v. *Smith,* 82 N. Y. 627; *Lockhart* v. *Wyatt,* 44 Am. Dec. 481; Mechem, Agency, § 376-378; Story, Agency, § 99. The receiver's powers were limited to such as were conferred on him by statute. § 5224, Rev. Stat. U. S.; *Case* v. *Small,* 10 Fed. Rep. 722; *Ellis* v. *Little,* 27 Kan. 707, 41 Am. Rep. 434; High on Rec. 360; *Beckham* v. *Sheckelford,* 29 S. W. Rep. 200. The surety must affirmatively prove knowledge on the part of the creditor who grants the extension at the time he does so in order to establish his release from liability. *Nichols* v. *Parsons,* 6 N. H. 30; *Norton* v. *Myers,* 77 N. W. Rep. 298. Ecton, the receiver of the mortgagee and the person who granted the extension, was not an agent of the mortgagee. *Ex parte* Chetwood, 165 U. S. 443. He was not chargeable with the knowledge of his assignor as to whether an apparent principal was a mere surety. *Davenport* v. *King,* 63 Ind. 64; *Wilson* v. *Foote,* 11 Metc. 285. The mortgage which she signed apparently as principal binds defendant personally to pay the debt. § 4706 Rev. Codes. Under the facts and precedents there was no constructive notice that defendant signed the mortgages as surety. *Spear* v. *Walker,* 20 Cal. 660-667; *Davenport* v. *King,* 63 Ind. 64; *Mullendore* v. *Wurtz,* 75 Ind. 431; *Gahn* v. *Niemcewiez,* 11 Wend. 312. Constructive notice is not

sufficient. *Norton* v. *Myers,* 77 N. W. Rep. 298. A married woman in this state can contract 'with her husband or any other party as though she were unmarried. § 2590 Comp. Laws; *Col. & U. S. Mtge. Co.* v. *Stevens,* 3 N. D. 265. It appeared upon the face of the mortgage that the defendant was not a surety for the land was not her separate property but the property of her husband and the correct doctrine is that the wife is presumed to be a surety only when she mortgages her separate estate and has not the rights of a femme sole. Brandt, § 22; *Leary* v. *Shaffer,* 79 Ind. 567; *Tennison* v. *Tennison,* 114 Ind. 424, 16 N. E. Rep. 818; *Hawley* v. *Bradford,* 9 Paige Ch. 200; *Alexander* v. *Bouton,* 55 Cal. 15. The agreement to extend if made was void. § 4699, Rev. Codes; *Wells* v. *Harter,* 56 Cal. 342.

*David R. Pierce,* for respondent.

The proposition that respondent executed the mortgages as surety for her husband is clearly established. Mr. Ecton, the receiver, took the same subject to all equities, burdens and offsets existing between the original parties. *Porter* v. *King,* 1 Fed. Rep. 755; *Wetherall's Appeal,* 3 Gratt. 281; *Fisher* v. *Knox,* 1 Harris, 622; *Murray* v. *Lylburn,* 2 Johns. Ch. 441; *Union College* v. *Wheeler,* 61 N. Y. 88; *Simpson* v. *Del Hoyo,* 94 N. Y. 189; *Kleeman* v. *Frisbie,* 63 Ill. 482; *Wagner* v. *Winter,* 122 Ind. 57; *State* v. *Lake City,* 25 Minn. 404. The respondent did not sign the notes which these mortgages secured. This was notice to the receiver that she was not a principal debtor. *Alter* v. *inits,* 21 La. Ann.317. The receiver took possession of the assets by authority of § 5234, Rev. Stat. of U. S., and such change of possession and the rights accruing thereunder, would have effect like a complete change in the officers of the bank. *Bank* v. *Kennedy,* 17 Wall. 22; *Price* v. *Abbott,* 17 Fed. Rep. 507. The circumstances proven are sufficient to show an agreement to extend. *Brooks* v. *Wright,* 13 Allen 72. The fact that a collateral note was given with additional security, both maturing December 1, 1895, is strong and convincing evidence of the intention to extend the principal indebtedness to that date. *First Nat. Bk.* v. *Lamont,* 5 N. D. 393; *Towle* v. *Greenberg,* 6 N. D. 37. The agreed purpose between the parties when the mortgages were executed was that Mrs. Francis should sign them for the purpose of waiving any rights she might have in the land. When, therefore, the signed instruments containing covenants binding her beyond such agreement such additional undertaking was without consideration and void. *Vanderbilt* v. *Schreyer,* 91 N. Y. 392; *Lattimore* v. *Harsen,* 14 Johns. 330.

BARTHOLOMEW, C. J. This case was tried by the Court. Plaintiff, failing to recover below, appeals, and demands a new trial in this Court upon all the issues raised by the pleadings. By the action plaintiff sought to recover a personal judgment against Eliza A. Francis, based upon the covenants to pay found in two certain real estate mortgages executed by Orin W. Francis and Eliza A. Francis, who were

husband and wife. The defense successfully made by Mrs. Francis was that she was surety for her husband, who was the principal debtor, and that the creditor extended the time of payment to her principal without her knowledge or consent. The testimony is not voluminous, and we have examined it carefully, and find the facts to be as follows: On February 1, 1893, Orin W. Francis was indebted to the First National Bank of Lakota in the sum of $4,482.70. On said date he executed and delivered to said bank nine certain promissory notes, representing said indebtedness, four of said notes being for $500 each, and maturing on December 1, 1893, with interest at the rate of 12 per cent. per annum. To secure the four notes last mentioned, Orin W. Francis and Eliza A. Francis executed a mortgage upon certain real estate owned by Orin W. Francis. This mortgage contained an express covenant that the mortgagors would pay said sum of $2,000 in accordance with the terms of said four promissory notes. At the time the notes were signed and the mortgage executed by Mr. Francis, Mrs. Francis was absent at a sanitarium in Michigan. The payee desired that Mrs. Francis should sign both the notes and the mortgage, but to this Mr. Francis objected. Finally, on the statement of the parties representing the bank that they desired to shut out any right of dower that Mrs. Francis might have, he sent the mortgage to her for execution. She says she signed it because her husband sent it to her and asked her to sign it. She received no money, nor was her separate estate ever in any manner benefited, by reason of the consideration for the indebtedness. On said February 1, 1893, Orin W. Francis executed to said bank five other promissory notes for the sum of $496.54, representing the balance of said indebtedness, and which said notes matured December 1, 1894. To secure said notes, said Orin W. Francis and Eliza A. Francis executed a mortgage upon other real estate belonging to said Orin W. Francis, which said mortgage also contained an express covenant on the part of the mortgagors to pay the sum secured thereby. The circumstances attending the execution of this mortgage by Mrs. Francis and her relations to the transaction were the same in all respects as in the mortgage first described. To secure his entire indebtedness to said bank, Mr. Francis also executed and delivered to the bank a chattel mortgage covering about 30 horses that he had on the farm. In the fall of 1893, the said First National Bank of Lakota was placed in the hands of a receiver. None of the notes were paid at maturity. In the spring of 1895, the receiver was threatening to foreclose the chattel mortgage. This Mr. Francis desired to avoid, and he testifies: "I made with them an arrangement whereby a part of the stock should be sold, and the proceeds applied on these notes, and part of the stock retained by me; that I should give an additional security, and notes would be extended,—that is, they would bring no action or proceeding against me for the foreclosure of the chattel mortgage or the real estate mortgage until the 1st

of December of that year." The defense also called the attorney for the receiver, with whom the contract was made, as a witness. The attorney does not go so far as Mr. Francis in his testimony. When asked if he made an agreement not to foreclose the real estate mortgages, he says he thinks not; that the negotiation related to the chattel security only, and amounted to an extension of time, so far as the chattel security was concerned. Under the terms of these negotiations, a portion of the property covered by the chattel mortgage was sold at private sale by Mr. Francis, and the proceeds turned over to the receiver, and properly indorsed upon the indebtedness. Mr. Francis also gave another note for the sum of $1,000, maturing December 1, 1895.. This is called a "collateral note," and had no consideration except the original indebtedness. To secure this note, Mr. Francis executed a chattel mortgage on certain property not included in the original chattel mortgage. It was agreed that, upon payment of this note at maturity, all the chattel property should be released. Subsequently this note was paid, and both chattel mortgages were released in full. The proper amounts were indorsed upon the original notes, and thereafter they were sold and transferred to the plaintiff herein.

Under these facts, was the relation of Mrs. Francis that of surety for her husband in the covenants of payment contained in the mortgages? Did the mortgagee so understand it, and was the receiver charged with notice of such relationship? Was there such an extension of time as would release a surety? All these questions were resolved in the affirmative by the trial court, and appellant insists that none of them were rightly decided.

Section 4649, Rev. Codes, reads as follows: "A surety is one who at the request of another and for the purpose of securing to him a benefit becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefor." Section 4650 declares: "One who appears to be a principal, whether by the terms of a written instrument or otherwise, may show that he is in fact a surety except as against persons who have acted on the faith of his apparent character of principal." These sections were in full force at the time of the transactions in this case involved. It stands undisputed that the debt named in the mortgages was the debt of Orin W. Francis, and that Mrs. Francis signed the mortgages at the request of her husband, and that her individual estate was in no manner benefited thereby. It stands undisputed, also, that Mr. Francis refused the request of the mortgagee to have Mrs. Francis sign the notes secured by the mortgages, and that he consented to have her sign the mortgages only for the purpose of releasing any right of dower that she might have in the real estate. While these facts are not competent to show that she incurred no liability in signing the mortgages containing an express covenant to pay, yet they are competent to show, and undisputed they establish the fact, that the mortgagee knew that Mrs. Francis was not a principal debtor, and that whatever

liability to pay she incurred was as a surety for her husband. As against the original mortgagee, she was surety only.

Did the receiver stand in a better position? Appellant urges that the surety must affirmatively show knowledge of the suretyship on the part of the creditor who grants the extension in order to claim a release thereby. As a general proposition, that is doubtless correct, but it will be sufficient if the facts appear from which the law will presume such knowledge. Certainly, in this case, the receiver had not acted on the faith of the apparent character of Mrs. Francis as a principal, within the meaning of our statute. That statute contemplates acting to his detriment, and operates by way of estoppel. It is urged that the receiver was not chargeable with a knowledge of the facts that were known to the bank. This is an unwarranted contention. It would, we think, be a surprising holding to declare that a receiver of a bank could enforce all unmatured commercial paper that he found among the bank assets, irrespective of the equities existing against such paper. And yet that must logically follow, if the knowledge of the bank is not to be imputed to the receiver. The fact is the receiver of a national bank is neither an indorsee nor an assignee for value. He is simply an agent and officer of the United States. *Ex parte* Chetwood, 165 U. S. 456, 17 Sup. Ct. 385, and cases cited. The government places him in charge of one of its financial agencies for the purpose of closing it up and terminating such agency, and in so doing he simply acts in lieu of the officers of the bank. He replaces them, stands exactly in their shoes, so far as the assets are concerned, and their knowledge necessarily becomes his knowledge. It follows, therefore, that whatever the receiver did, by way of extending time of payment, was done with full knowledge that Mrs. Francis was surety only.

Was there, in fact, such an extension of time of payment granted by the receiver to the principal as releases the surety? The trial court, with the witnesses before him, so held. We, upon the cold record, reach the same conclusion. For whatever agreement was made there was sufficient consideration in the fact that a new mortgage was given covering property that had not theretofore been included. Mr. Francis testifies positively that the agreement was that no proceedings should be had, either upon the chattel mortgages or the real estate mortgages, until the maturity of the $1,000 note secured by the new chattel mortgage. The attorney who acted for the receiver thinks there was nothing said as to the real estate mortgages, but that the negotiation related only to the chattel security. In view of the fact that it was the duty of the receiver to realize on the assets as early as possible, and in view of the fact that he testifies that he thought he was strengthening his claim by taking the new chattel security, and in view of the fact that no steps whatever were taken to enforce the real estate security during the time for which it is claimed an extension was granted, we are of opinion that an actual extension of time, as to both the real and

personal security, was in fact given, or, at least, that such was the understanding, whether expressly so stated or not, and, this understanding having been acted upon, the surety is released. *Osborn* v. *Low,* 40 Ohio St. 347; *Ducker* v. *Rapp,* 67 N. Y. 464; *Lambert* v. *Shitler,* 62 Ia. 72, 17 N. W. Rep. 187.

It is urged that a receiver of a national bank has no authority to grant an extension of time. No case is cited where it has been so held. There are certain things a receiver may not do. He has no power to compound or settle claims without authority from a competent court. Such is the statute. Section 5234, Rev. Stat. U. S. And in the case of *Case* v. *Small,* 10 Fed. Rep. 722, cited by appellant, nothing more is decided, and that is held only by an inference. *Beckham* v. *Sheckelford,* 8 Tex. Civ. App. 660, 29 S. W. Rep. 200, also cited by appellant, decides the same point, and also that such receiver cannot settle a claim against the bank in such a manner as to give effect to a preference made by the bank after it became insolvent. And *Ellis* v. *Little,* 27 Kan. 707, is to same effect. No other cases are cited upon this point. The duties of the receiver required him to convert the assets of the bank into cash as speedily as was consistent with realizing the largest amount therefrom, and deposit the money with the comptroller of the currency for distribution among the creditors of the bank. In this performance of his duty, necessarily he must exercise a large discretion. It is inconceivable that all the details of collection are to be submitted to the comptroller, and his orders received thereon. Nothing of that kind was ever contemplated, and nothing of that kind is ever done in practice. We have no doubt that the receiver had full power to grant an extension of time, as was done in this case, if thereby he could secure additional security, which in his judgment strengthened the claim. If the receiver had authority to make such a contract for extension he had full power to ratify such contract when made by his attorney.

Counsel rely upon section 4699, Rev. Codes, which declares that "a mortgage of real property can be created, renewed or extended only by writing executed with the formalities required in the case of a grant of real property." Counsel wholly misapprehend the meaning of the word "extended" as there used. The statute has no reference whatever to an extension of time for the payment of the debt secured by the mortgage. A mortgage is "extended" only when it is made to stand as security for some debt or obligation not originally included therein. This can only be done as the statute directs. That this is what is meant will clearly appear from the cases which have considered the language. See *Stoddard* v. *Hart,* 23 N. Y. 556. California has the same statute, and appellant cites *Wells* v. *Harber,* 56 Cal. 342, as sustaining its view. An analysis of the case will show that it is given the same meaning we attach to it. In that case a note had been given with real estate security. The note became barred by the statute of limitations, and the lien of the mortgage, as the opinion recites, was extinguished. Thereafter the note

was renewed. Action to foreclose was brought. The Court said: "The agreement (of renewal) made between the payor and payee of the note, and indorsed on it in writing on the 10th of February, 1875, was the creation of a new contract. * * * It is this new contract that gives the plaintiff the right to recover the amount of the note. But the creation of a new contract to pay the money did not create a new mortgage to secure its payment." That, the Court say, could only be done as the statute prescribes. The judgment of the District Court is made the judgment of this Court, and is in all things affirmed. All concurr.