(88 N. W. Rep. 284.)

---

## C. C. ROBERTS *vs.* CALLIE ROBERTS.

Opinion filed Nov. 27, 1901.

**Mortgages—Wife's Homestead—Limitations—Payments.**

> A husband and wife executed a mortgage upon the homestead to secure the debt of the husband. The wife did not sign the note, but the mortgage contained a covenant to pay the debt as described in the note. The husband made payments on the note without the wife's knowledge or acquiescence during the life of the mortgage. This action was not commenced until about 11 years after the giving of the mortgage, and not until after the husband's death. The wife pleads that the statute of limitations has run against the mortgage so far as she is concerned, as said payments were made without her consent, and that she was her husband's surety in giving the mortgage. No personal liability is claimed upon the covenant to pay contained in the mortgage. *Held*:
>
> 1. That in waiving her homestead rights by signing the mortgage the relation of surety did not arise.
> 2. That the statute of limitations has not run against the mortgage.
> 3. That the mortgage was a waiver of the wife's homestead rights, simply, and continued in force by virtue of payments by the husband.

Appeal from District Court, Cass County; *Pollock, J.*

Action by C. C. Roberts against Callie Roberts executrix of the estate of Lorenzo D. Roberts, deceased, for the foreclosure of a mortgage. From a judgment denying foreclosure, plaintiff appeals. Reversed.

*Pollock & Scott,* for appellant.

*S. B. Bartlett* and *Benton, Lovell & Holt,* for respondent.

MORGAN, J. This is an action brought for the foreclosure of a mortgage upon real estate situated in Cass county. The mortgage was executed and delivered to the plaintiff on the 1st day of October, 1888, by Lorenzo D. Roberts and Callie Roberts, his wife. It was given to secure the payment of a certain promissory note for the sum of $3,118, and interest thereon at 8 per cent. per annum and payable on demand to C. C. Roberts, and was executed by L. D. Roberts individually on October 1, 1888. The said L. D. Roberts was the husband of Callie Roberts, and died on the 16th day of May, 1899, and before the commencement of this action.

The land involved in this suit and described in the mortgage was at the time of the execution of such mortgage, and continued to be up to the death of said L. D. Roberts, the homestead of said L. D. Roberts and Callie Roberts, and the same has ever since been occupied as a homestead by the said Callie Roberts and her adopted daughter. The consideration for the giving of the note and mortgage was money loaned by the plaintiff to his brother, the said L. D. Roberts. This money was used in the development and improvement of such homestead, and in buying stock and machinery for its cultivation. On January 1st, 1895, the sum of $1,766.83 was paid on said note, and on January 1, 1897, the further sum of $25 was paid thereon, and each of such payments was duly indorsed on said note. These payments were made by L. D. Roberts, without the knowledge or consent of Callie Roberts. She did not know of such payments until the fall of 1899, and after her husband's death. The defendant Callie Roberts never received, directly, any part of the money for which the mortgage was given as security. The mortgage contained an express covenant on the part of the mortgagors to "pay or cause to be paid the sum of money above specified at the time and in the manner above specified.' The mortgage contained a full description of the indebtedness as expressed by the note. The money for which this note was given, and which was secured by the mortgage, was loaned to said L. D. Roberts without any security at first. But about eight months after such loan the note and mortgage were executed at the request of the mortgagor, L. D. Roberts. The action is brought against Callie Roberts as executrix of the estate of L. D. Roberts deceased. She answers in such capacity and individually, that she executed the said mortgage as a surety for her husband, and at his solicitation and request; that she received no consideration whatever for the giving of the same; that the plaintiff well knew that she executed such mortgage as surety for her husband only; that no payments were ever made on such note or mortgage with her knowledge, consent, or authority; that the cause of action based on such mortgage so far as the mortgage is concerned, did not accrue within ten years prior to the commencement of the action. The trial court found in her favor, and dismissed the action as to her personally, and ordered judgment against her as executrix for the full amount claimed, but refused to order a judgment for the foreclosure of the mortgage. Plaintiff appeals from such judgment, and requests a trial de novo in this court under the provisions of § 5630, Rev. Codes.

From the pleadings and the evidence the following facts may be considered entirely uncontradicted. That the indebtedness represented by the note and secured by the mortgage was the individual debt of the husband, and not the debt of the wife; that the wife executed the mortgage at the request of her husband; that the real estate secured by the mortgage was then occupied as the home-

stead of such parties; that such homestead was set apart to Callie Roberts as the widow of L. D. Roberts, deceased, by the county court of Cass county, and the same is now held and occupied by her and her daughter as such; that the wife received no consideration for the execution of the mortgage.

It is claimed by the defendant that in executing the mortgage the relation of principal and surety was created between her and her husband, and the case of *Bank* v. *Francis,* 8 N. D. 369, 79 N. W. Rep. 853, and other cases, are cited to support such contention. We are not called upon to determine that question in our decision of the case, for the reason that no personal judgment is sought to be obtained against her. Such liability is not claimed in the complaint, and is disclaimed in the brief. The real question to be determined by us is whether the lien of the mortgage existed as against the defendant when the action was commenced; whether payments made by the husband, without the knowledge or consent of the wife, during the life of the mortgage, operated to continue the lien of the mortgage as against the homestead after the time it would have been released from such lien had no payments ever been made thereon. These payments made by the husband had the effect of continuing the debt in force so far as the husband was concerned, and it and the mortgage were both in force at the time this action was commenced, so far as his interests are concerned. If the mortgage is in force so far as the defendant is concerned, it is so by virtue of the fact that the payments made by the husband prevented the running of the statute, except as commencing at the date of such payments. No payments were ever made by the wife or on her behalf. To determine the effect of such payment by the husband, the following facts must be considered and borne in mind: The mortgage was given upon the property of the husband. The title was vested in him exclusively. The land was his land and his homestead, as the head of the family. He controlled it and its rents, profits, or products. Her right to the land during his life was the right to occupy and live upon it as his wife, and to make her home with her husband. She could also prevent her husband from selling or conveying the same, as no conveyance thereof would be valid unless she joined with her husband in executing the conveyance. She had no title in the homestead when she executed the mortgage. During his life she had the right to occupy it with him. At his death it continued to be the homestead of herself and family, and she then had the right to its use, rents, profits, or products, free from any of his debts that she had not consented to, as liens thereon by virtue of her conveyance or mortgage thereof. The rights of the wife in the homestead are well stated in *Kuhnert* v. *Conrad,* 6 N. D. 215 69 N. W. Rep. 185, as follows: Mrs. Florence A. McCauley had no title or estate in the land. Her homestead rights, as in all similar cases, rested upon the marital relation, coupled with her husband's ownership of the fee. Her mere possessory right was founded upon

her husband's ownership and her marital relation to him. When the foundation was removed by a valid transfer of the title from her husband to a stranger, her possessory right vanished at once." The same principle as to the rights of a wife to the homestead is laid down under statutes similar to our own in *Smith* v. *Scherck*, 60 Miss. 491, and in *Jenness* v. *Cutler*, 12 Kan. 500. It therefore follows that when she executed the mortgage in suit she conveyed no property of her own, and created a lien upon no property of her own, nor any property jointly owned by herself and husband. She merely waived her possessory right to the premises upon default in the conditions of the mortgage. At the request of her husband she relinquished her homestead right by joining with him in the execution of the mortgage,—a mortgage upon his property to secure his debt. The debt was not her debt, nor the property hers. The statute entitles her to occupy such property with her husband, or, in case he abandons her, to occupy it as her home, with her family, and to occupy it as a home after his death. But she waived such rights by executing the mortgage, subject to default in the conditions of the mortgage to secure his debt. By executing the mortgage to secure the debt of her husband she consented that her homestead right should become subject to payment of his debt, without any restrictions, unless the debt and mortgage became barred by the running of the statute of limitations. She waived her homestead right with knowledge that the husband had a right to pay the debt, and is bound by his acts, so long as her rights have not been unlawfully infringed upon. Part payment by the husband in a regular manner during the life of the mortgage is not such an act as discharges the morgage as to her, although it had the effect of continuing the lien of the mortgage longer than it would otherwise have continued. As said by the supreme court of Mississippi in *Smith* v. *Scherck*, supra,: "When, therefore, she joins in a mortgage of it to secure a debt, the property quoad the mortgage ceases to be a homestead, and is bound as any other property of the husband would be; and as long, therefore, as the the debt is kept alive by him who owes it, the mortgage remains in full force. Having consented that it might be bound for that debt, it must so continue until the debt be discharged by judgment, or by such lapse of time as constitutes a valid bar in behalf of the debtor." In this case the debt exists so far as the husband is concerned. So does the mortgage, also. Each by virtue of the payments made by the husband, and were effective in keeping the mortgage in force as to her.

None of the cases cited by respondent go to the extent of holding that a payment on a debt of the husband by him without the wife's knowledge or consent releases the mortgage given by husband and wife on his property, unless the mortgage be fully paid before the statute runs against the mortgage. The case of *Dunn* v. *Buckley*, 56 Wis. 190, 14 N. W. Rep. 67, is cited. In that case the wife signed a mortgage on the homestead to secure the husband's debt. The

homestead mortgage was additional and collateral security to a bill of sale which was in reality a chattel mortgage on the husband's property embraced in the bill of sale. The personal property embraced in the bill of sale was sold with the husband's consent, and the money received on such sale was not applied to pay the debt secured by the wife's mortgage. The court held that the money received on such sale should have been applied on the debt secured by the wife's mortgage, and held that the mortgage was discharged. In that case the action of the husband was prejudicial to the interests of the wife. In this case the action of the husband in making payments on the note was not prejudicial, but beneficial, to the interests of the wife. Hence the life of the mortgage was not extended by an act of the husband not contemplated by the wife when the mortgage was given. *Spencer* v. *Fredendall*, 15 Wis. 666, is cited also. In that case, also, the mortgage signed by the wife on the homestead was fully paid. The husband entered into an agreement with the creditor, without the wife's consent, that the original mortgage should stand as security for another debt. The court properly held that this could not be done as it operated as a new incumbrance of the homestead. In *Campbell* v. *Babcock*, 27 Wis. 512, the court simply held that the wife was not estopped to plead usury in respect to a mortgage on the homestead, although the husband had estopped himself from so doing. In *Barber* v. *Babel*, 36 Cal. 11, the husband and wife executed a note and a mortgage upon land which afterwards became their homestead. Subsequently, and after the land became their homestead the husband gave a new note and mortgage to secure the same debt upon the same land, the wife refusing to sign the new mortgage; and the husband received a release of the old mortgage, which was recorded. There was an extension of the time of payment of the debt. The court held that the second mortgage was void, and that the statute of limitations had run as to the wife upon the first mortgage, and that the husband had no right to make a new contract affecting the homestead without the concurrence of the wife. Many of the cases cited by the respondent are based upon facts where the wife had mortgaged her own separate property as surety for her husband. Such is the case of *Bank* v. *Burns*, 46 N. Y. 170, where the wife's mortgage of her separate property was held released because the husband and the creditor extended the time of payment of the debt without her consent. In the case at bar no personal liability being claimed, and the wife not having mortgaged her own individual property, the case of *Bank* v. *Francis*, supra, is not applicable, and the wife is not a surety within that decision. In signing the mortgage the wife waived her homestead privileges and assumed no responsibility as surety under the pleadings and evidence in the case. So far as signing the mortgage is concerned, independent of the covenants to pay, the relation of surety did not arise. *Jenness* v. *Cutler*, 12 Kan. 500; *Tennison* v. *Tennison*, 114 Ind. 424, 16 N. E. Rep. 818.

Our conclusion is that the homestead was not released from the lien of the mortgage at the commencement of this action.

The judgment of the district court is reversed, and said court is directed to order a foreclosure of the mortgage, as prayed for in the complaint. All concur.