Ole N. NESET and Mabel R. Neset, Plaintiffs and Respondents,

v.

M. B. RUDMAN and George Neset, and all other persons unknown claiming an estate in, or lien or encumbrance upon the real property described in this complaint, Defendants,

M. B. Rudman, Defendant and Appellant,

George Neset, Defendant and Respondent.

No. 7563.

Supreme Court of North Dakota.

Feb. 3, 1956.

Burk & O'Connell, Williston, for plaintiffs and respondents and defendant and respondent George Neset.

Bjella, Jestrab & Neff, Williston, for defendant and appellant.

MORRIS, Judge.

The plaintiffs brought this action on October 27, 1954, to determine adverse claims to the Southwest Quarter of Section 19, Township 157, Range 94 in Mountrail County. The only named defendant was M. B. Rudman. Upon motion of Rudman, George Neset was added as a second party defendant.

The complaint is substantially in statutory form. Section 32–1704, NDRC 1943. The defendant Rudman answered denying generally the allegations of the complaint. By way of a further defense and counterclaim, he alleged that on the tenth of August 1949 he purchased and secured an oil and gas lease from George Neset, the owner of the land in question, and further alleged that the plaintiffs represented to Rudman that George Neset was the owner of the land; urged Rudman to purchase an oil and gas lease from him; and that the plaintiffs are now estopped from asserting title to the property as against the lease.

The plaintiffs by way of reply allege that they are the owners of the property; that they are husband and wife and entered into possession in 1908; and that they occupied

the property as their home and homestead continuously from 1913 until May 8, 1954. They further allege that agreements to convey the land to George Neset, if any, were not reduced to writing or subscribed by the plaintiffs and are barred by Section 47–1001, NDRC 1943 and Section 47–1805, NDRC 1943.

The trial court found that the plaintiffs were the owners of the property in fee simple and that Rudman's oil and gas lease was null and void. Judgment was entered quieting title in the plaintiffs. From this judgment Rudman appeals and demands a trial de novo.

.The record shows that the rights, if any, which the plaintiffs have and which they assert to this land are entirely separate and distinct from each other. Therefore the evidence and the law with respect to the plaintiffs' claims will be considered separately. The rights of Mabel R. Neset rest exclusively upon her relationship as spouse of the owner with whom she made a home upon the land until May 8, 1954.

A written stipulation of the parties was entered into through their respective counsel and admitted as an exhibit at the trial. It pertains to the testimony of the plaintiff, Mabel R. Neset, who was unable to be present. In this stipulation it was stated that if she were present she would testify that she moved into a dwelling house on the land and continuously resided there with her husband, Ole N. Neset, from 1913 until May 8, 1954, and that since that date she has not resided on the land. It is further stipulated:·

"She is not a record owner of the property and any rights she may have had in the property she acquired under the homestead laws of the State of North Dakota."

▮ A wife as such has no title or estate in the homestead owned by her husband but she has a right to reside thereon until she abandons it or joins with her husband in alienating it. Kuhnert v. Conrad, 6 N.D. 215, 69 N.W. 185; Roberts v. Roberts, 10 N.D. 531, 88 N.W. 289; Helgebye

v. Dammen, 13 N.D. 167, 100 N.W. 245. The trial court found that at the time the oil and gas lease was executed the plaintiffs were living on and occupying the land as a homestead but made no finding with respect to abandonment. When the stipulation and the allegations of the complaint are considered in connection with the testimony of Ole N. Neset it is clear that his wife had no homestead right or interest in the land when this action was commenced. He testified to the effect that his son purchased the land in question and two other quarter sections of land from him in 1947 or 1948 and that the son had lived with the father as long as the latter had lived there and that the son continued to live there after Mr. and Mrs. Neset moved into Tioga. The transcript further shows this::

"Q. Mrs. Neset left the SW¼ of 19 at the same time in May of last year and you both live together now in Tioga? A. Yes.

"Q. That's your home now isn't it Mr. Neset? A. Yes, now it is."

It is clear that the plaintiffs abandoned the homestead when they left the farm to the possession of a son and moved to Tioga. Since Mrs. Neset never had anything but a homestead right in the property, when she abandoned that homestead for a new home in Tioga there remained in her no right, title, or interest in the land.

In State v. Rosenquist, 78 N.D. 671, 51 N.W.2d 767, 787, we said:

"Under the express terms of the statute [Section 32–1701, NDRC 1943] it is only a person who has 'an estate or an interest in, or lien or encumbrance upon real property' who may maintain an action to determine adverse claims thereto. It follows that a person who has no estate or interest in, or lien or encumbrance upon the real property may not maintain an action to determine adverse claims thereto."

In this case Mabel R. Neset, having abandoned the homestead right which she once had prior to the commencement of the action, has no right, title, or interest in the

land and no right to maintain an action to quiet title with respect thereto. Dever v. Cornwell, 10 N.D. 123, 86 N.W. 227.

We will now consider the facts and the law as they apply to Ole N. Neset. During all of the times pertinent to this action he was the record title owner to the land involved therein. He and his wife lived on and occupied the land as their homestead until May 8, 1954, when they abandoned it and moved to Tioga. In 1947 or 1948 Ole sold the land to his son George Neset, who had lived with his parents since childhood, who was then about thirty years of age. At the same time he sold two adjacent quarter sections of land to George. Ole and his wife gave George a deed to these two tracts but apparently the transaction regarding the home quarter was entirely verbal. After May 8, 1954, George continued to live on the farm. The record is silent as to the consideration that was to be paid but George testified that he still owed his father money on the transaction. On August 10, 1949, George Neset executed the oil and gas lease that is under attack. This lease covered the three quarter sections of land that Ole had sold to George. George received all of the delay rentals provided for in the lease. Ole contends that the lease is void because George, the lessor, had no title to the land at the time the lease was made. He asserts that George had no title because the land was a homestead and Mabel R. Neset, the wife, did not join in the sale to him and that the contract under which George purchased the land being wholly oral was void as being violative of the statute of frauds, Section 47–1001, NDRC 1943.

■ This is an action to determine adverse claims and is therefore essentially equitable in nature. Northwestern Mutual Savings and Loan Association v. Hanson, 72 N.D. 629, 10 N.W.2d 599; Udgaard v. Schindler, 75 N.D. 625, 31 N.W.2d 776; Mueller v. Mercer County, N.D., 60 N.W. 2d 678.

■ With respect to the statute of frauds it appears that there was no compliance in the first instance with Sections 9–0604 and 47–1001, NDRC 1943, and that the contract by which the land was sold to George Neset was void unless, at the time the lease in question was made, there had been sufficient performance to take the contract out of the operation of these statutes. See Brey v. Tvedt, 74 N.D. 192, 21 N.W.2d 49; Henry S. Grinde Corp. v. Klindworth, 77 N.D. 597, 44 N.W.2d 417; Fried v. Lonski, 48 N.D. 1023, 188 N.W. 582; Syrup v. Pitcher, N.D., 73 N.W.2d 140. There was part performance on the part of George Neset but the nature and extent of that performance is not shown by the record and it is impossible to determine therefrom whether the part performance was sufficient to take the transaction out of the operation of the statute. Were this point vital to a decision of the case, we would remand the record for the taking of further testimony. We do not do so because, as will appear by our further discussion, the statute of frauds is not a controlling issue.

■■ Turning now to the question of the homestead and its effect upon the contract by which Ole N. Neset sold the land to his son, we find that a conveyance or encumbrance of a homestead not executed by both the husband and the wife is void. Dixon v. Kaufman, 79 N.D. 633, 58 N.W. 2d 797 and cases cited therein. Also Hoffer v. Crawford, N.D., 65 N.W.2d 625, and Dockter v. Crawford, N.D., 65 N.W.2d 691. Likewise, a contract executed by the husband alone for the sale of the homestead of himself and wife is void. Silander v. Gronna, 15 N.D. 552, 108 N.W. 544, 125 Am.St.Rep. 616; Larson v. Cole, 76 N.D. 32, 33 N.W.2d 325.

The defendant Rudman contends that even though the contract by which Ole N. Neset sold the land to his son is void as being violative of the statute of frauds or the law governing the conveyance of homesteads, both the father and the son are estopped to deny the title of George Neset and the oil and gas lease which he executed as against the defendant Rudman. In support of this contention he points to the law

of equitable estoppel and to Section 31-1106, NDRC 1943, which provides:

"When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

He bases his contention upon the following facts in addition to those already set forth. Sometime before the execution of the lease in question the defendant Rudman had employed R. O. Burbidge to secure oil and gas leases on land in the vicinity of the Neset farm. Ole N. Neset was well known in the neighborhood. Burbidge got Mr. Neset to accompany him in his work of securing leases. In the morning he would call for Ole N. Neset at the farm. During the day they would drive around from farm to farm and Neset would introduce Burbidge to prospective lessors. According to Burbidge, Ole N. Neset told him that he, Neset, did not own any land; that he would have to see George to get an oil and gas lease on the farm. Neset says he "Didn't speak to me about leasing mine." But he further testified as follows:

"Q. Did you tell Mr. Burbidge that George owned your land? A. I told Mr. Burbidge that George made a deal for it, yes.

"Q. And that therefore he should get an oil and gas lease from George? A. I told George to lease that when he leased his own.

"Q. You told Mr. Burbidge he should get the oil and gas lease from George, that the property belonged to George? A. I don't remember just the words.

"Q. In substance that's what you told him? A. I told him that George had made the deal for 3 quarters.

"Q. You must have told Burbidge that the property belonged to George because you were driving Burbidge around? A. Yes.

"Q. And Burbidge wanted to lease your land didn't he? A. I don't know what was between me and Burbidge but I told George he could lease mine when he leased his own."

Ole N. Neset also testified: "I never told him that he would have to have George sign a lease. All I told George was to lease the land when he leased his own."

"Do you recall having told other people that George had bought the land from you? A. Yes.

"Q. You have told other people? A. Yes.

"Q. And that George owns the land? A. I have told them that George made a deal for the land, yes.

"Q. He bought the land? A. Yes.

"Q. And you told Mr. Burbidge that didn't you? A. Yes."

George Neset testified regarding the circumstances under which he executed the oil and gas lease. Ole N. Neset and Burbidge came into the town of Tioga where the father went into a building and he got his son. Both went out to the car together but the son does not remember whether the father stayed in the car or not during the ensuing conversation. Burbidge began talking about leasing the land. George said he had bought the land. He executed the lease. Burbidge had a plat book from which he obtained the descriptions. George complies with the Agricultural Stabilization and Conservation Program and told the people in the program office that he owned the property. Since the lease was executed he has put the delay rentals in his bank account. His father has paid the taxes. In a deposition of Ole N. Neset taken on cross-examination before trial he testified that he told Burbidge that he would have to have George sign a lease.

■ It is clear from the evidence that the plaintiff, Ole N. Neset, represented to

Burbidge that George Neset owned the property in question; that he told George Neset to execute the lease for him; and that George, pursuant to his father's instructions, did execute the lease.

■ The effect of Section 31–1106, NDRC 1943 above quoted is to enact into substantive law the equitable principle of estoppel and render it cognizable in both law and equity. In an oft quoted passage from Dickerson v. Colgrove, 100 U.S. 578, 25 L.Ed. 618, it is stated that:

"The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden."

The defense of estoppel may be invoked against a plaintiff who seeks to determine adverse claims to real estate. 44 Am.Jur., Quieting Title, Section 66; 74 C.J.S., Quieting Title, § 41.

■ In an action to determine adverse claims affirmative relief may be granted to remove a cloud which results from a title that cannot be asserted or enforced because of circumstances creating an estoppel. 44 Am.Jur., Quieting Title, Section 33; see cases cited in Annotation: Cloud on Title, e. Title and liens barred by estoppel, 78 A.L.R. page 119.

In Engholm v. Ekrem, 18 N.D. 185, 119 N.W. 35, 38, the plaintiffs, who were husband and wife and owners of the property in dispute, sought to quiet title against the rights of the defendant who claimed to be a purchaser of the property under contract which the plaintiffs claimed contravened the statute of frauds and the statute prescribing the manner in which a conveyance of a homestead must be executed. The defendant contended that the plaintiffs by their conduct were estopped from asserting the invalidity of his contract. This court said:

"Neither the statute of frauds nor the various statutory provisions enacted for the protection of a homestead claimant can be held to do away with the general equity doctrine of estoppel in pais. While it is true some courts have held to the contrary, the weight of modern authority is to the effect that the doctrine of equitable estoppel will be applied to a married woman as well as to a feme sole. The doctrine is not invoked to render valid a contract which is void under the statute of frauds or under statutes for the benefit and protection of the homestead claimants, but it is invoked to prevent the successful perpetration of fraud by preventing wrongdoers from urging the provisions of such statutes to shield them in their tortious conduct. We are agreed that under the facts as disclosed by this record the appellants should be, and are, estopped from asserting title to the premises as against the respondent. * * *

"It was never intended that the homestead laws should be so construed as to permit their owners to perpetrate a fraud, either actual or constructive, upon the rights of others." See also Tiffany on Real Property, Third Edition, Section 1235; Thompson on Real Property, Permanent Edition, Section 2619; American Law of Property, Section 5.102.

It is argued that the defendant Rudman had constructive notice that Ole N. Neset was the record owner and should have relied on the record to ascertain who had the right to lease the land. This argument carries its own refutation when it appears as it does here that the record owner disclaimed his title and it was upon his statements that the lessee relied in taking the lease. These factors strengthen rather than weaken the estoppel.

It is clear that at the time this action was brought Mabel R. Neset had no interest in the land, homestead or otherwise, and that Ole N. Neset is by his representations

and conduct estopped from asserting any right, title, or interest in the land as against the defendant M. B. Rudman and that the oil and gas lease herein described is as to the interests of the plaintiffs a superior, valid, and existing lease.

The judgment appealed from is reversed and the case is remanded for entry of judgment consistent herewith.

BURKE, C. J., and SATHRE, JOHNSON, and GRIMSON, JJ., concur.