Matt **SCHWARTZENBERGER** and Ruth Schwartzenberger, husband and wife, Plaintiffs and Appellants,

v.

William Herbert **HUNT TRUST ESTATE,** John T. Livingston, Trustee, Defendant and Appellee.

**Civ. No. 9202.**

Supreme Court of North Dakota.

July 21, 1976.

Rehearing Denied Aug. 24, 1976.

James L. Taylor, Watford City, for plaintiffs and appellants.

Rolfstad, Winkjer, Suess, McKennett & Kaiser, Williston, for defendant and appellee; submitted without oral argument by Dean Winkjer.

ERICKSTAD, Chief Justice.

Matt and Ruth Schwartzenberger, husband and wife, by complaint dated September 12, 1974, initiated a cause of action (claim for relief) against William Herbert Hunt Trust Estate, Lloyd B. Sands, Trustee. John T. Livingston was substituted as trustee defendant when it became known that Lloyd B. Sands was no longer the trustee and Livingston voluntarily submitted to the jurisdiction of the court.

In the complaint, the Schwartzenbergers allege in essence that (1) they own the following described property:

Lots One (1), Two (2), Three (3) and Four (4), and the Northeast Quarter of the Southwest Quarter (NE/4SW/4), the East Half of the Northwest Quarter (E/2NW/4), the Northeast Quarter (NE/4) of Section Eighteen (18), Township One Hundred Forty-six (146) North, Range Ninety-eight (98) West of the Fifth Principal Meridian, McKenzie County, North Dakota, and containing 419.27 acres more or less;

(2) on July 25, 1972, they executed in favor of the Trust Estate an oil and gas lease that provided for a primary term of ten years and which included a provision to the effect that if operations for drilling were not commenced on the premises or on lands pooled therewith, the oil and gas lease should be considered terminated unless, on or before one year from the date of the lease, the lessee should tender and pay to the lessors

the rental of four hundred nineteen and 27/100 dollars ($419.27) which should cover the privilege of deferring commencement of drilling operations for a period of twelve months; (3) notwithstanding that drilling was not commenced, the Trust Estate failed to make payment of delay rentals in the sum due and owing of four hundred nineteen and 27/100 dollars ($419.27) on the anniversary date as provided in the lease and that accordingly the Trust Estate is now in default and in arrears in the payment of the delay rentals; (4) any and all deposits heretofore made as attempted payments of the said rentals by the Trust Estate to the Bank of Killdeer as the agent of the Schwartzenbergers, are rejected and refused as being insufficient to extend the time for drilling for oil and gas on the said premises; (5) on March 25, 1974, notice of termination and forfeiture of the oil and gas lease was given to the Trust Estate and that said Trust Estate has neglected, failed, and refused to file a release of the oil and gas lease; (6) the Schwartzenbergers have accordingly had to retain the services of legal counsel to commence an action for damages and for the termination of the oil and gas lease.

In their prayer for relief, the Schwartzenbergers ask that the oil and gas lease relating to the above matter bearing document number 189990, dated July 25, 1972, filed July 28, 1972, at 10:50 a. m. in Book 165 Miscellaneous at page 559 in the office of the Register of Deeds of McKenzie County, North Dakota, be deemed in all things terminated, and (2) that the Trust Estate be enjoined from exercising any control or authority over the premises, that it be determined and decreed that the Trust Estate has no interest in the said premises, and that the title to said oil and gas be quieted in the Schwartzenbergers.

The trustee for the Trust Estate responded by acknowledging the Schwartzenbergers' ownership of the lands and the provisions of the lease.

A pertinent part of the answer follows:

"IV.

"That on or about the 25th day of July, 1972, the Defendant herein did negotiate with the Plaintiffs herein for the purchase of an oil and gas lease. That the agent for the Defendant and the Plaintiffs herein did understand that there were 419.27 surface acres and that they did verily believe that the Plaintiffs did own 398.31 mineral acres lying in and under the property. That they did negotiate said oil and gas lease on the basis of a $3.00 per acre bonus for which they did tender to the Plaintiffs a draft on the 25th day of July, 1972, in the amount of One Thousand One Hundred Ninety-four and 93/100 Dollars ($1,194.93).

"V.

"That the draft was duly endorsed by the Plaintiffs herein and in due time was paid by the Defendant and that thereafter the Defendant did cause said oil and gas lease to be recorded in the Office of the Register of Deeds of McKenzie County, North Dakota, on the 28th day of July, 1972, at 10:50 A.M. in Book 165, Page 559.

"VI.

"That in accordance with the oil and gas lease, the Defendant was required, if it wished to sustain said lease, to pay delayed rental on or before the anniversary of said lease, being the 25th day of July, 1973, by tendering to the Bank of Killdeer delayed rental. That the Defendant did tender to said Bank the delayed rental on the 18th day of June, 1973, for the period of July 25, 1973 to July 25, 1974, the sum of Three Hundred Ninety-nine and 31/100 Dollars ($399.-31) *, which sum was deposited to the account of the Plaintiffs herein.

"VII.

"That on the 10th day of June, 1973, the Defendant did tender to the depository bank, the Bank of Killdeer, the sum of Three Hundred Ninety-nine and 31/100 Dollars ($399.31) * to cover the rental period of July 25, 1974 to July 25, 1975. That said monies were deposited into the account of the Plaintiffs herein.

"VIII.

"That the Defendant does hereby set forth that the actual net mineral acres underlying said property is 406.31 net mineral acres, whereas by mutual mistake Matt Schwartzenberger and Ruth Schwartzenberger and the William Herbert Hunt Trust Estate did understand and did verily believe that there were underlying said property a net mineral interest of 398.31 acres.

"IX.

"That the Defendant herewith does tender the difference of Three and no/100 Dollars ($3.00) per mineral acre as bonus consideration on eight (8) mineral acres, or the sum of Twenty-four and no/100 Dollars ($24.00) and does further tender the sum of Sixteen and no/100 Dollars ($16.00) for the delayed rental periods of July 25, 1973 to July 25, 1974; and July 25, 1974 to July 25, 1975.

"X.

"That the Plaintiffs having accepted said delayed rental payments are estopped from now claiming the insufficiency of those rental payments.

"WHEREFORE, Subject to the tender hereinbefore set forth, the Defendant prays that the Complaint of the Plaintiffs be in all ways dismissed and that the title in and to the oil and gas lease on said property be quieted in favor of the William Herbert Hunt Trust Estate, John T. Livingston, Trustee."

[* The actual amount deposited in each case was $398.31. The sum mentioned in the complaint includes an additional dollar for bank service charges.]

After a hearing at which testimony was taken and arguments made, the matter was taken under advisement and judgment in favor of the Hunt Trust Estate was subsequently entered. The findings of fact included a finding that Mr. Schwartzenberger, during the negotiations prior to the execution of the oil and gas lease, informed the agent for the Trust Estate that there was a five percent reduction in the mineral acreage due to a reservation by McKenzie County or the State of North Dakota and that, upon this information, the agent for the Trust Estate prepared an oil and gas lease covering 419.27 surface acres and 95% of the minerals, or 398.31 mineral acres, whereas in fact at the time of the execution of the oil and gas lease the Schwartzenbergers owned 100% of the minerals in the northeast quarter of section eighteen and 95% of the minerals in the remaining real property for a total mineral acreage of 406.-24 mineral acres.

The trial court concluded that the oil and gas lease did not truly express the intentions of the parties because of a mutual mistake on the part of the parties and that therefore the lease should be reformed so as to express the true intention of the parties. The court found that the correct total surface acreage was 419.20 acres and that the oil and gas lease should be reformed to include, as delay rentals for the total surface acreage involved, the amount of $419.20, subject to the provision of the lesser interest clause found at paragraph 10 of the oil and gas lease which allows the Trust Estate to pay the delay rentals on the mineral interests which the court determined to be 406.24 acres, or a delay rental yearly of $406.24.

The court ordered the Trust Estate to pay the Schwartzenbergers the sum of $23.79 for the differences in the bonus payments actually made under the original lease and those required by the reformed lease and to pay to the Schwartzenbergers the sum of $15.79 for the difference between the delay rentals actually paid under the original lease and those required by the reformed lease.

On appeal the Schwartzenbergers seem to contend that the trial court was in error in its finding that Mr. Schwartzenberger, during the negotiations prior to the execution of the oil and gas lease, informed the agent for the Hunt Trust Estate that there was a 5% reduction in the mineral acreage due to a reservation by McKenzie County or the State of North Dakota.

In reviewing the record, one could glean from it that Mr. Schwartzenberger did so indicate; however, one could also conclude from the record that he informed the agent

that he did not know the extent of his mineral acreage and that he relied upon the agent to check the records in the register of deeds' office and pay him accordingly. The sight draft given to him at the time of the taking of the lease authorized payment of $1,194.13 ($3.00 per mineral acre for 398.31 acres, a product equal to 95% of the recited 419.27 surface acres).

The agent for the Trust Estate testified that he relied on a "pomco" map which is used in the oil industry and upon the information he received from Mr. Schwartzenberger in preparing the lease and in determining the mineral interest which Schwartzenbergers owned. He further testified that after leaving the Schwartzenbergers' home he went to the office of the register of deeds in McKenzie County and checked the records there. At that time he failed to discover the mistake of assuming that all of the land was subject to the 5% reservation whereas only a part of it was subject to a 5% reservation in the State of North Dakota.

 Applying Rule 52(a) of the North Dakota Rules of Civil Procedure, which provides that unless findings of the trial court are clearly erroneous they shall not be set aside by the appellate court, we decline to set aside the trial court's finding relative to the circumstances surrounding the securement of the lease and the conclusion that a mutual mistake was made relative to the mineral acres. See *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973) in which we said:

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. * * * The mere fact that the appellate court might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to reverse the lower court. [Citations omitted.]" *Id.*, 820.

The next issue, however, is more difficult to determine. It relates to the trial court's conclusion that the lease should be re-formed because of the existence of a mutual mistake and continued in effect as re-formed after the payment of the deficiencies in the bonus payment and the deferred rentals.

Pertinent to this discussion is the testimony of Mr. Schwartzenberger to the effect that, sometime after New Year's Day (presumably in 1974), he wrote to the Trust Estate saying "that they underpaid me on my rental and I would like to have them to cancel my lease."

 This testimony, although not supported by any documentary proof, is also not disputed by the Trust Estate. It may be, however, that notwithstanding this fact, the trial court declined to believe it, and this the trial court was privileged to do. *Larson v. Meyer*, 135 N.W.2d 145, 154 (N.D. 1965) (see cases cited therein). In *Larson* we held that the trier of fact is not required to accept the uncontradicted testimony of an interested party.

Further testimony pertinent to this subject involves a notice dated March 25, 1974, sent by certified mail from the Schwartzenbergers to the Trust Estate informing the Trust Estate that they had determined that the lease was cancelled and terminated by reason of the failure of payment of delay rentals. This notice also contained the admonition that unless the Trust Estate notified the register of deeds within 20 days that the lease had been forfeited, the Schwartzenbergers would file with the register of deeds an affidavit of forfeiture.

In response to this notice, the Hunt Trust Estate sent a letter of April 1, 1974, to the Schwartzenbergers in which they acknowledged the receipt of the notice of termination and forfeiture, denied the Schwartzenberger request for release and asserted that the Trust Estate had tendered delay rentals in accordance with the lease.

In the letter, the Trust Estate referred to paragraph 10 of the lease as a basis for paying for only 95% of the acreage covered by the lease. A pertinent part of the letter follows:

"The lease provides for a delay rental of $1.00 per net mineral acre and according to our title information, you own a net 95% mineral interest in the acreage covered by the lease. We specifically point out the second sentence in Paragraph 10 which reads:

'In case said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in the proportion that his interest bears to the whole and undivided fee.'

"We issued our delay rental payment in the amount of $398.31 which is 95% of the total rental provided in the lease. We enclose herewith a copy of the rental receipt which will evidence the fact that the rental was timely tendered to the Bank of Kildeer, Kildeer [sic], North Dakota, the depository named in the lease. You will note that the bank acknowledged receipt of the payment."

Following receipt of this letter, counsel for the Schwartzenbergers sent the Hunt Trust Estate a letter dated April 8, 1974, as follows:

"Mr. and Mrs. Matt Schwartzenberger have retained my services to commence an action to cancel an Oil and Gas Lease for failure to pay the proper delay rental to cover the full ownership of the lessors. In response to your letter of April 1, 1974, the State of North Dakota reserved 5% of all the oil, natural gas and minerals . . . pursuant to the provisions of Chapter 149 of the 1939 Session Laws of North Dakota . . . and which covers the following described real property:

\* \* \* \* \* \*

"Your lease of July 25, 1972, encompasses 419.27 acres more or less and which was recorded July 28, 1972 at 10:50 A.M., Book 165 Misc., Page 559. *There appears to be a discrepancy of 8.00 net mineral acres.*

"*In the event we do not hear from you by the 14th of April, 1974, we shall proceed with an action for cancellation* of oil and gas lease." [Emphasis added.]

The Schwartzenbergers contend that since this was an "unless" lease (as it is commonly denominated), then the lease terminated automatically when the Hunt Trust Estate failed to drill or to pay the correct amount of the deferred rentals. They rely on *Woodside v. Lee*, 81 N.W.2d 745 (N.D.1957).

In *Woodside* the court said:

"The generally accepted construction of the provisions for the termination of an 'unless' lease is that the 'unless' clause does not state a condition subsequent upon which the lease may be forfeited but states a common-law or special limitation upon which the interest of the lessee terminates immediately. [Citations omitted]

"Upon failure of the lessee to commence drilling operations within the limited time, such a lease terminates ipso facto without any notice or demand upon the part of the lessor unless delay rentals are paid as provided by the lease. [Citations omitted]"

*Id.* at 746; accord, *Schank v. North American Royalties, Inc.*, 201 N.W.2d 419, 426 (N.D.1972).

The Trust Estate contends that where a mutual mistake has occurred the lessor has a duty to notify the lessee of its mistake so that the lessee will have an opportunity to make a proper payment of the delay rentals. Hunt Trust Estate refers us to *Humble Oil & Refining Co. v. Harrison*, 146 Tex. 216, 205 S.W.2d 355, 361 (1947).

In *Humble* the Ottos owned a three-fourths interest in the minerals underlying a certain tract of land. They conveyed what the appellate court construed to be a one-half interest in those minerals to Harrison. Humble Oil, assuming the conveyance to be a one-half interest in the three-fourths interest, sent Harrison checks covering half of the three-fourths interest rather than half of the mineral interest. Harrison contended that the failure of Humble to pay him the correct amount of delay rentals terminated the lease.

The Supreme Court of Texas, in concluding that Harrison was estopped to assert that Humble's lease had been terminated because of its failure to make sufficient payments of delayed rentals to him, pointed out that there was no evidence that Humble did not act in good faith, no evidence that Humble acted negligently, and that there were provisions in the deed which made its meaning ambiguous and thus that the construction adopted by Humble's agent was not without reasonable foundation.

In finding Harrison estopped, the court said:

" * * * Where, as in this case, the lessee has in good faith made a mistaken construction of the lessors' partial conveyance of their interests and lessee has made a payment in accordance with such construction, of which the assignee has notice, the duty rests on the assignee to notify the lessee of its mistake so that the lessee will have an opportunity to make a proper payment of the delay rentals. Where the assignee, instead of giving the lessee such notice, remains silent, we hold that the assignee is estopped to assert that the lease has terminated as to his interest on the ground that the lessee has failed to pay him a sufficiently large share of the delay rentals." *Id.*, 205 S.W.2d at 361.

The Texas court pointed out that the leases in *Humble* executed by the Ottos contained the provision that "no change in the ownership of the land or part thereof, the minerals or interest therein, shall impose any additional burden on the Grantee." It concluded that it would be an imposition of an additional burden on the lessee to require that the lessee determine at its peril the proper construction of an ambiguous instrument thereafter executed by the lessors, conveying a part of their interest in the minerals and the royalty, bonuses and delayed rentals.

*Humble* is distinguishable from the instant case in that, in the instant case, there is evidence that the Trust Estate acted negligently in that its agent failed to discern when checking the records in the register of deeds' office, that the 5% reservation was not contained in the deed to the northeast quarter of section eighteen; further, there is nothing in the record before us and particularly in the abstracts of title that would constitute a reasonable foundation for the agent's mistake in checking the records at the office of the register of deeds; and further, in the instant case, the pertinent documents are not documents involving a change in the ownership of the lands or part thereof, the minerals or interest therein subsequent to the execution of the lease.

If we were to apply the rule laid down in *Humble* as a qualification to the rule in *Woodside*, we could not sustain the trial court's judgment in the instant case for the reason that we believe that adequate notice was given to the lessee in the instant case by the lessors prior to the commencement of the action in this case.

If we were to disregard the allegation that notice was sent by the Schwartzenbergers and a negative response was received by the Trust Estate some time following New Year's Day, 1974, there exists documentary proof of the written notice dated March 25, 1974, the rejection of that notice by letter dated April 1, 1974, the letter on behalf of the Schwartzenbergers by their counsel addressed to the Trust Estate dated April 8, 1974, extending to the Trust Estate until the 14th of April, 1974, an opportunity to respond prior to the commencement of an action to cancel the lease, and the complaint dated September 12, 1974.

■ In other words, the record discloses that the Trust Estate, after written notice, first denied its obligation to pay a greater amount to retain its lease, and then ignored a repeated contention that it was in error until the Schwartzenbergers, some five months later in justified impatience, brought the present action. In *Humble* the company, while denying error, nevertheless tendered an amount more than sufficient to cover the disputed amount.

Whether we will in the future apply the rule that under circumstances of mutual mistake the lessee is entitled to receive

notice of its mistake before the lease will be terminated, we need not decide today. It is sufficient to say that, under the circumstances of this case, the lessors are entitled to a termination of the lease under the principles enunciated in both *Woodside* and *Humble*.

For the reasons stated in this opinion, the judgment of the trial court is reversed and the case is remanded for the entry of a judgment consistent with this opinion.

SAND, PAULSON and VOGEL, JJ., concur.

PEDERSON, J., dissents.