NORMAN JESSEN & ASSOCIATES,
INC., Plaintiff and Appellee,

v.

AMOCO PRODUCTION COMPANY,
DENVER, COLORADO, Defendant
and Appellant.

Civ. No. 9919.

Supreme Court of North Dakota.

May 12, 1981.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellant, argued by Jane Fleck Romanov, Bismarck.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for plaintiff and appellee, argued by Marvin L. Kaiser, Williston.

PAULSON, Justice.

Amoco appeals from a summary judgment entered against it by the District Court of Williams County on December 4, 1980. The summary judgment decreed that Jessen was entitled to immediate possession of oil and gas leasehold interests formerly held by Amoco. We reverse and remand the case for trial.

On September 14, 1972, Amoco obtained, by way of assignment from its lease broker, oil and gas leases for all of Section 17, Township 144 North, Range 100 West of the Fifth Principal Meridian, in Billings County, North Dakota. Each lease contained an "unless" clause.[1] The lessors, who acquired their respective interests in the land by virtue of the final decree of distribution of the Estate of John O'Brien, were Donald O'Brien and Rose O'Brien, Patrick O'Brien and Carla O'Brien, Joseph Edward Bollong and Helen Joyce Bollong, Patricia L. Jost and Arnold Jost, Lucille L. Schichel and Albert Schichel, and Kathleen O'Brien Sauvegeau [sometimes spelled "Sauvageau"]. Each of the six lessors was paid $533.34 ($5 per net mineral acre for 106.667 net mineral acres) as a bonus payment for the execution of the lease. In addition, on the anniversary date of the lease, Amoco paid each of the six lessors the sum of $106.67 as a delay rental payment. The payments were made from 1973 through 1978 and each lessor accepted the payments. Amoco has not produced oil and gas on the property under the leases but has conducted a seismographic survey on the property.

Prior to the execution of the leases to Amoco's lease broker, Patrick and Genevieve O'Brien and Donald and Rose O'Brien conveyed their interests in the oil and gas on the property by separate mineral deeds to the Schichels, Bollongs, Josts, and to Mrs. Sauvegeau. The mineral deeds from the O'Briens are of record and were executed on December 5, 1968. Thus, despite the fact that six lessors executed leases for the property, only the Schichels, Bollongs, Josts, and Mrs. Sauvegeau had ownership in the oil and gas interests in the property.

In 1979, Patricia and Arnold Jost, Lucille and Albert Schichel, Helen and Joseph Bollong, and Kathleen O'Brien Sauvegeau executed top leases[2] to Jessen and then notified Amoco of the deficiency in delay rental

---

1. The "unless" clause of the lease stated, in pertinent part:

"If no well be commenced on said land on or before the 14th day of September, 1973, this lease shall terminate as to both parties, *unless* the lessee on or before that date shall pay or tender to the lessor ... [emphasis added]"

2. The term "top lease" is defined in Williams and Meyers, (4th Ed. 1976) Manual of Oil and Gas Terms, p. 606, as:

"A lease granted by a landowner during the existence of a recorded mineral lease which is to become effective if and when the existing lease expires or is terminated."

payments. When Amoco learned of the deficiency it deposited $160, instead of $106.67, to each lessor's account for the lease year of 1979. The lessors immediately returned their $160 payments to Amoco and requested that Amoco cancel and release the leases because of insufficient delay rental payments. Thereafter, Amoco did not at any time tender any moneys to the lessors for the difference in the delay rental payments for the lease years of 1973 through 1978, both inclusive.

The Josts, Schichels, Bollongs, and Mrs. Sauvegeau filed demands for the release of their oil and gas leases pursuant to § 47–16–36 of the North Dakota Century Code, and Amoco filed affidavits of lease validity. On March 7, 1980, Jessen commenced this action pursuant to Chapter 32–17, N.D.C.C., in order to quiet title to the oil and gas leasehold interests on the property. In its answer to Jessen's complaint, Amoco asserted that its oil and gas leases in the property were valid and that Jessen and the lessors were estopped from claiming termination of the leases. Jessen submitted a motion for summary judgment and summary judgment was ordered on November 10, 1980. Judgment was entered against Amoco on December 4, 1980.

Two issues are presented for our consideration:

1. Whether or not Amoco's appeal should be dismissed because of Amoco's failure to include in the record on appeal a transcript of the hearing held on the motion for summary judgment and because the appendix was defective in that it failed to include the interrogatories of the parties and the answers to the interrogatories.

2. Whether or not the district court properly granted summary judgment against Amoco.

■ Jessen contends that Amoco has failed to meet the requirements of Rules 10(b) and 11(h) of the North Dakota Rules of Appellate Procedure. The record transmitted included the interrogatories of the parties and the answers to the interrogatories. Jessen argues that arguments of

counsel at a hearing on a motion for summary judgment constitute an evidentiary hearing within the meaning of Rule 10(b), N.D.R.App.P., and that Amoco was required to supply a transcript of the proceedings. The argument is without merit and the motion is denied because the hearing does not involve the reception of evidence but only the arguments of counsel.

■ The second issue presented for our consideration on appeal concerns whether or not Jessen was entitled to summary judgment. Summary judgment facilitates the disposition of litigation without a trial where material facts are not disputed or where only a question of law exists. *St. Paul Fire & Marine v. Amerada Hess Corp.*, 275 N.W.2d 304 (N.D.1979). However, undisputed facts do not justify summary judgment if reasonable differences of opinion may exist as to the inferences to be drawn from the undisputed facts. *Helbling v. Helbling*, 267 N.W.2d 559 (N.D.1978). The evidence must be viewed in the light most favorable to the party against whom summary judgment is demanded. *Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292 (N.D.1979). Summary judgment is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the North Dakota Rules of Civil Procedure.

■ Drilling and rental clauses consist of two common types: 1) the "unless" clause which contains no covenant and does not require the lessee to act; and, 2) the "or" clause which contains a covenant and binds the lessee to do some act. Aside from the fact that the "unless" clause contains no covenant, the essential difference between the clauses lies in the manner in which they are construed. The "unless" clause is construed as a clause of special limitation while the "or" clause is construed as a clause of condition. In the event that the delay rental payments required by the lease are deficient in either the time or the amount of the payment, the lease containing an "unless" clause terminates automatically. *Woodside v. Lee*, 81 N.W.2d 745 (N.D.1957);

*Schwartzenberger v. Hunt Trust Estate,* 244 N.W.2d 711 (N.D.1976).

■ The "unless" clause states a limitation upon which the lease terminates if no drilling or payment of delay rentals occurs. Because no covenant or duty is imposed by the clause, the lessor cannot recover in an action for damages for failure to drill·or for the failure to pay rentals. Thus, courts have strictly construed the "unless" clause to require payment of delay rentals within the time period specified by the lease and in the correct amount. Equitable rules against forfeiture are generally not applicable in determining whether or not the lease is terminated. On the other hand, a lease containing an "or" clause requires action by the lessor to effect termination of the lease and equitable rules against forfeiture are applicable in determining whether or not the lease should be terminated. Williams, Oil and Gas Law, Vol. 3, §§ 606, 607.8 (1980); Summers, The Law of Oil and Gas, Vol. 3, § 452 (1980).

Because the leases obtained by Amoco from the lessors contained "unless" clauses, Jessen relies upon the principles pertaining to the "unless" clause in oil and gas leases coupled with the fact that there are no disputed issues of fact to support the district court's issuance of the summary judgment. Jessen also relies upon the fact that the mineral deeds executed by the O'Briens were of record prior to the time in which Amoco, through its lease broker, obtained the oil and gas leases. Amoco contends that reasonable inferences may be drawn from the facts to support its contention that Jessen and the lessors be estopped from terminating the leases or that a mutual mistake existed between the lessors and Amoco which prevents the termination of the leases. Amoco's contention is based upon the fact that the lessors accepted the delay rental payment of $106.67 for a five-year period before claiming that the delay rental and bonus payments were deficient. Amoco argues that it would prove at trial that the lessors either knew of the deficiency in the payments but did not object and thus were estopped from terminating the leases or that the lessors were not aware of the deficiency in the payments until the top leases were executed to Jessen and thus a mutual mistake existed which would prevent the termination of the leases.

The dispute centers upon whether or not the doctrines of estoppel or mutual mistake may apply to an oil and gas lease containing an "unless" clause. The courts generally hold that a lease containing an "unless" clause terminates automatically upon the failure of the lessee to make a full payment of the delay rental. The "unless" clause was developed to allow the lessee under an oil and gas lease to terminate the obligation to drill or pay delay rentals where no oil and gas were found on the property subject to the lease. Summers, Oil and Gas, Vol. 2, § 334 (1980). The clause allows the lessor to receive delay rentals in the absence of exploration operations. The policy of strictly construing the "unless" clause has been followed even though harsh results may occur. Similarly, the rule of automatic termination of a lease containing an "unless" clause has been applied with equally harsh results. Williams, Oil and Gas Law, Vol. 3, § 606.2 (1980).

In *Woodside v. Lee,* 81 N.W.2d 745 (N.D. 1957), the court held that the lessor was not estopped to assert the termination of a lease containing an "unless" clause because the requirements necessary to invoke the theory of estoppel were not present in the facts of the case. Although the general rule is that equitable relief is not available to alleviate the hardship of termination of an "unless" clause lease, it has been held under a variety of circumstances that equitable relief is applicable to prevent the automatic termination of a lease containing an "unless" clause. Summers, Oil and Gas, Vol. 3, § 452 (1980). The diverse views on the applicability of equitable relief are a consistent problem but the case for the application of equitable relief becomes stronger when the failure to make the proper payment is due to the conduct of the lessors. Some courts have held that if the lessor accepts an insufficient delay rental payment, he may be estopped to assert the termination of the lease. Williams, Oil and Gas Law, Vol. 3, § 606.3 (1980); *Hove v. Atchison,* 238 F.2d 819 (8th Cir. 1956).

In the instant case, the conveyance of oil and gas by way of the mineral deeds from the O'Briens created two estates in the land—the mineral estate and the surface estate. *Bilby v. Wire*, 77 N.W.2d 882 (N.D.1956); *Schank v. North American Royalties, Inc.*, 201 N.W.2d 419 (N.D.1972). The fact that the mineral estate had only four owners was reflected by the recorded mineral deeds. Under § 47–19–19, N.D. C.C., the recording of the mineral deed is notice of the contents of the deed as to all persons. Clearly, Amoco is chargeable with having had notice of the contents of the mineral deeds executed by the O'Briens. The lease broker erroneously relied upon the decree of distribution of the estate of John O'Brien when he determined the ownership interests in the oil and gas. However, the record created by the recorded mineral deeds does not foreclose Amoco's contention that estoppel may apply to the factual setting in the instant case.

In *Neset v. Rudman*, 74 N.W.2d 826 (N.D. 1956), the court held that the plaintiffs were estopped from claiming an ownership interest in the oil and gas on the property despite the fact that they were the record title owners of the property. The doctrine of estoppel applied because the plaintiffs had represented to the defendant that the plaintiffs' son was the owner of the property and had persuaded the defendant to obtain an oil and gas lease from the plaintiffs' son. The court stated in *Neset, supra* 74 N.W.2d at 831:

"It is argued that the defendant Rudman had constructive notice that Ole N. Neset was the record owner and should have relied on the record to ascertain who had the right to lease the land. This argument carries its own refutation when it appears as it does here that the record owner disclaimed his title and it was upon his statements that the lessee relied in taking the lease. These factors strengthen rather than weaken the estoppel."

While in the instant case the record owners of the oil and gas interests did not disclaim their ownership interest, the record owners presented no objection to the amount of the bonus payment or the delay rental payments until a second oil and gas lease was executed. The doctrine of estoppel is contained in § 31–11–06, N.D.C.C., which states:

"31–11–06. *Estoppel by declaration, act, or omission.*—When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

Thus, the doctrine of estoppel may arise from silence as well as from expressed words. The reasons for automatically terminating a lease containing an "unless" clause have been cited earlier. These reasons seem inapplicable where, as in the instant case, the lessee has acted in good faith on the belief that its lease was valid in all respects. Amoco has consistently paid the delay rentals on time and to the proper parties under the lease. The dispute centers only on the amount of the bonus and delay rental payments. Amoco has conducted an expensive seismographical survey on the property and has made an attempt to correct the deficiency in the delay rental payment. On the other hand, the lessors did not object to the amount of the delay rental payments until top leases were executed. We cannot conclude that under this state of facts Jessen is entitled to judgment as a matter of law. The doctrine of estoppel may be applied to a lease containing an "unless" clause. The determination of whether or not it may apply in the instant case is a matter to be resolved at trial.

Amoco also contends that the doctrine of mutual mistake may be applied in the instant case. In *Schwartzenberger v. Hunt Trust Estate*, 244 N.W.2d 711 (N.D.1976), the court did not hold that the doctrine of mutual mistake could be applied to prevent the termination of a lease containing an "unless" clause, but expressly reserved the issue for a proper case. *Schwartzenberger* involved a factual situation different from the one in the instant case. In *Schwartzenberger, supra*, the trust estate ignored the notification given by the Schwartzenbergers that the delay rentals were insuffi-

cient. The court, in *Schwartzenberger*, heavily relied upon the absence of good faith on the part of the trust estate in reaching its decision that the lease was terminated because of the "unless" clause. In the instant case, Amoco acted in good faith and made an attempt to correct the insufficient payments for the lease year. While the instant case also involves a situation where, as in *Schwartzenberger*, the agent of the lessee made a mistake in determining the record title owners of the oil and gas, this fact is not dispositive of the issue of whether or not the doctrine of mutual mistake may apply to a lease containing an "unless" clause.

■ It is an elementary principle of the law of remedies that a mutual mistake will permit reformation of the contract. Dobbs, Handbook on Law of Remedies § 5.2 (2d Rep.1976); *Ell v. Ell*, 295 N.W.2d 143 (N.D. 1980). Again, we are confronted with the principle that equitable rules against forfeiture are not applicable to a lease containing an "unless" clause because the lease terminates automatically if the payment of delay rentals is not sufficient.

■ The principles supporting the rule that equitable rules against forfeiture are not applicable to leases containing an "unless" clause, again, seem to be inapplicable to the situation where a mutual mistake has occurred. Where the lessee has complied with the provisions of the written lease and has conducted extensive operations on the land to determine whether oil and gas are present, the policy of development which serves as the basis for oil and gas leases is thwarted. The economic waste caused by a result which deprives the lessee of the benefit of its operations cannot be seen as a benefit to the lessors, who encourage development of oil and gas. The only benefit to the lessors lies in the fact that they will receive substantial bonus payments and delay rental payments as a result of the termination of the leases executed to Amoco.

We cannot sanction a result which would deprive Amoco of its efforts in a situation where a mutual mistake occurred. Section 9–03–13, N.D.C.C., defines a mistake of fact as follows:

"*9–03–13. 'Mistake of fact' defined.—* Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

"2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed."

The determination of whether or not both Amoco and the lessors operated under a mutual mistake of fact is an issue which remains to be resolved at trial. For the reason that Jessen is not entitled to judgment as a matter of law and because factual issues must be determined at the trial, we conclude that the judgment of the district court is reversed and the case is remanded for trial.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.